[No. 17581-9-II.   Division Two.   April 12, 1996.]
MARVIN G. MARTINEZ, ET AL., *Appellants*, v. THE CITY OF TACOMA, ET AL., *Respondents*.

*Hugh J. McGavick* and *Law Offices of Monte E. Hester, Inc., P.S.*, for appellants.

*Timothy J. Whitters* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*, for respondents.

WIGGINS, J.* — We must decide whether the trial court abused its discretion by limiting the successful plaintiff's attorney fee award in an employment discrimination action to the contingent fee agreement percentage of the damages found by the jury. The trial court limited the attorney fee award to 50 percent of the $8,000 damages found by the jury, for a total fee of $4,000. We hold that the trial court's heavy reliance on the contingent fee percentage contravenes the purposes of the fee award authorized by Washington's Law Against Discrimination. The trial court abused its discretion in setting the plaintiff's attorney fee award in this manner, and we reverse and remand for a redetermination of a reasonable attorney fee and costs.

## FACTS

Plaintiff Marvin G. Martinez was employed by the City of Tacoma Human Rights Department (the City) from 1984 until July 1988. Martinez worked as a contract case investigator on employment discrimination cases. He was

---

*Judge Charles K. Wiggins was a member of the Court of Appeals, Division Two, at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

terminated on July 11, 1988. Martinez's prior attorneys filed this lawsuit on May 30, 1991.

In his complaint, Martinez claimed employment discrimination, intimidation, and harassment. At trial,[1] Martinez contended that the City discharged him because of his national heritage (Hispanic) and because he was not African-American. Martinez claimed that the City discharged him in retaliation for complaining that he was subjected to different terms and conditions of employment than other non-Hispanic case investigators. Martinez also claimed that his supervisors' coercive actions forced Martinez into accepting discriminatory practices.

Employment discrimination claims under RCW 49.60 are subject to a three-year statute of limitations. This action was filed more than three years after Martinez's last working day, but before the City hired a replacement for Martinez. The statute of limitations restricted the nature of the damages Martinez could claim at trial.

Martinez asked in his complaint for $3,500,000 for his claims and $500,000 for loss of consortium for his wife Diana. Approximately 10 days before trial, Martinez offered to settle with the City for $240,000. At trial, Martinez asked the jury to award $295,238 for emotional distress and lost wages for Martinez and loss of consortium for his wife Diana. After a seven day trial, the jury found in favor of Martinez, finding $8,000 in damages. The jury found against Diana Martinez on her claim for loss of consortium.

Martinez sought an award of attorney fees pursuant to RCW 49.60.030. Martinez's attorney, Hugh McGavick, filed a declaration detailing his experience, which included several civil rights, discrimination, and other personal injury cases. McGavick initially assisted Martinez in trying to negotiate a settlement with the City even before Martinez was terminated. Other lawyers then represented

---

[1]Pursuant to RAP 9.2(c), Martinez did not arrange to transcribe the trial testimony. From the limited record, we do not know the evidence presented to the jury on discrimination and loss of consortium.

Martinez, but withdrew from the case three months before the trial date because they considered it "unwinnable." McGavick agreed to undertake Martinez's representation less than two months before the trial date. McGavick and Martinez signed a fee agreement that provided:

> Client agrees to pay Attorney a **$2,500 retainer**, with $1,500 due and payable on or before April 22, 1993, and the remaining balance of $1,000 due and payable on or before May 1, 1993. Said fees shall be earned at the rate of $125 per hour.

> Client agrees to pre-pay or reimburse all costs incurred in the prosecution of this case promptly, as directed by attorney.

> Client has volunteered and offered, and attorney has accepted and agreed, that attorney shall be entitled to a **50% contingent fee** of the gross recovery herein, whether said recovery is received as a result of settlement of judgment. This contingent fee shall be reduced by all retainer monies already paid.

> In the event that there is an opportunity to submit a petition for prevailing party attorney fees, Attorney shall do so, and shall seek to be compensated at the agreed rate of $125 per hour. If Prevailing Party Attorney fees are either negotiated or awarded, such "fees" belong to the client, and Attorney shall be entitled to the agreed contingent fee percentage of such award, as well as the agreed contingent fee on the underlying gross recovery.

(Emphasis in original.)

McGavick submitted an affidavit detailing total time of 430.6 hours from April 18 through July 9, multiplied by $125 per hour for a total lodestar request of $53,825. McGavick asked for a 50 percent increase in the fee, for a total of $80,737. McGavick supported his claim for an hourly rate of $125 with copies of fee awards in two recent federal district court cases awarding him fees at that rate, and the affidavit of a local attorney that this was a reasonable and competitive rate. McGavick also sought to recover $6,985.33 in costs, consisting largely of the services

of a legal assistant/investigator charged at $50 per hour, and copies of depositions and transcripts.

Defendant City conceded that McGavick's hourly rate was customary in the locality for similar legal services. But the City argued that the fee should be a percentage of the damage award of $8,000.

The trial court stated that two factors caused him difficulty in determining an appropriate fee award. First, the court disagreed with the jury verdict that the City had engaged in discriminatory or retaliatory conduct, but conceded that the jury verdict governed the case.[2] Second, the court observed that McGavick did "an excellent job":

> Not only that, you handled a very difficult client and a difficult set of claims with dignity and a lot of integrity, and I appreciated that, and it made the case much more believable, I think, for your client, and all in all, I think you did an excellent job as [defense counsel] Mr. Whitters did, but that makes it more difficult for me.

But the court concluded that the contingent fee agreement should govern the fee award:

> I have to apply the factors that the courts keep coming back to . . . as set forth and codified in the rules of professional conduct and they're also cited in almost every case where attorneys' fees are awarded under whatever reason they're awarded: statutory or equitably and so on. I've gone through those, and I think the bottom line for me is the contingent fee agreement. After all is said and done, that's what you both agreed to, and it carries a great deal of weight for me. I know you spent — *I'm not questioning the time you spent; I'm not questioning the hourly fee.* I just think that given the result, given the agreement between you and your client, that that should be the fee that I will order the city to pay and I will.

(Emphasis added.) On reconsideration, the court clarified:

---

[2]On reconsideration, the court clarified that the merits of the claim were not the court's decision to make: "I accepted the jury's verdict, and that's that; we all do."

I think the more appropriate way of saying that was that, of all the factors, that it seemed to me most appropriate to grant the amount that the contingency fee called for, considering all of the things that happened in the case and all the things I'm supposed to consider in reaching that decision, and that's what I did . . . .

The court also awarded costs of $2,383.91, disallowing the $3,300 for investigator/legal assistant charges, and other charges as well.

The trial court denied Martinez's motion for reconsideration and this appeal followed.

## ANALYSIS

### Reasonable Attorney Fee

We begin our analysis with the language of Washington's Law Against Discrimination, RCW 49.60. The law proclaims:

The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of race, creed, color, national origin, . . . are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.[3]

The Legislature has also declared that "[t]he provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof."[4] Any person injured by discrimination in employment may bring an action for injunctive relief and damages "together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the

---

[3]RCW 49.60.010.

[4]RCW 49.60.020.

United States Civil Rights Act of 1964 as amended . . . ."[5] The incorporation of remedies under the Federal Civil Rights Act of 1964 has led our Supreme Court to look to federal case law in awarding reasonable attorney fees under the Law Against Discrimination.[6]

■ Our Supreme Court has stated that the Legislature's goal in enacting the fee shifting statute was "to enable vigorous enforcement of modern civil rights litigation and to make it financially feasible for individuals to litigate civil rights violations."[7] The Court has called for liberal construction of the attorney fee entitlement in order to encourage private enforcement of the Law Against Discrimination.[8] Looking to the intent of Title VII of the Federal Civil Rights Act (the remedies of which are incorporated into RCW 49.60.030) that the plaintiff in a civil rights action should act as a "private attorney general," the court has concluded that attorney fees should be awarded to any prevailing plaintiff unless there exist "special circumstances."[9]

The United States Supreme Court has discerned a similar legislative intent in 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act of 1976.[10] The Court has noted the difference between private tort actions and civil rights actions: "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitu-

---

[5]RCW 49.60.030(2).

[6]*Blair v. Washington State Univ.*, 108 Wn.2d 558, 570, 740 P.2d 1379 (1987); *Fahn v. Cowlitz County*, 95 Wn.2d 679, 683-84, 628 P.2d 813 (1981).

[7]*Hume v. American Disposal Co.*, 124 Wn.2d 656, 675, 880 P.2d 988 (1994) (citing *Blair*, 108 Wn.2d at 572-73) (refusing to expand costs available outside civil rights context), *cert. denied*, 115 S. Ct. 905 (1995).

[8]*Blair*, 108 Wn.2d at 570.

[9]*Fahn*, 95 Wn.2d at 684-85.

[10]Titles II, III and VII of the Civil Rights Act included attorney fee entitlements before 1976. In 1975, the Supreme Court held that attorney fees could not be granted in civil rights actions on a "private-attorney-general" theory. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975). Congress responded by enacting 42 U.S.C. § 1988 to award a reasonable attorney fee to prevailing parties in civil rights litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

tional rights that cannot be valued solely in monetary terms."[11] The Court concluded that attorney fee awards in civil rights litigation should not be tied to monetary damages:

> Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief. Rather, Congress made clear that it 'intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and *not be reduced because the rights involved may be nonpecuniary in nature.*'[12]

The Court further quoted the legislative history of the Act that "[c]ounsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, *for all time reasonably expended on a matter.*'"[13] In other words, the purpose of § 1988 is to encourage private attorneys to undertake representation in cases in which "the damages likely to be recovered are not sufficient to provide adequate compensation to counsel, as well as those frequent cases in which the goal is to secure injunctive relief to the exclusion of any claim for damages."[14]

Based on the language and purpose of the Law Against Discrimination, the Washington Supreme Court has rejected the argument that the reasonable fee award is limited by the compensation agreement between the plaintiff and counsel. In *Fahn v. Cowlitz County*, the defendant argued that plaintiffs were not entitled to a fee

---

[11]*City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986).

[12]*City of Riverside*, 477 U.S. at 575 (quoting S. Rep. No. 1011, 94th Cong., 2d Sess., at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913).

[13]*City of Riverside*, 477 U.S. at 575 (quoting S. Rep. No. 1011, at 6, which in turn cited *Davis v. County of Los Angeles*, 8 EPD ¶ 9444 (C.D. Cal. 1974).

[14]*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 726, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987).

award because their counsel had agreed to undertake the case on a pro bono basis. The Court held pro bono representation would not preclude an award of reasonable fees under the Law Against Discrimination.[15] In *Blair v. Washington State Univ.*, the trial court had reduced the plaintiffs' fee award because the plaintiffs were represented by public interest attorneys, and the trial court assumed that it was inevitable that public interest lawyers would lack efficiency and duplicate efforts. The Supreme Court held that the trial court abused its discretion in considering that the plaintiffs were represented by public interest attorneys, looking to federal precedent in the absence of any guidance under our statute. The Court observed that the United States Supreme Court had held that reasonable attorney fees under § 1988 are to be calculated based on prevailing market rates, regardless of whether the attorney is a private or nonprivate counsel, and that counsel's actual operating costs are irrelevant in computing a reasonable fee.[16]

*Fahn* and *Blair* teach that the court should award reasonable attorney fees based on market rates regardless of the terms of the private compensation arrangements between plaintiff and counsel. If the plaintiffs in those cases were entitled to recover reasonable fees after paying their pro bono publico attorneys nothing, surely Martinez is entitled to recover reasonable fees regardless of the terms of his contingency fee agreement with attorney McGavick.

█ The Washington Supreme Court has not directly considered whether the trial court may adopt a contingent fee as the controlling factor in awarding a reasonable attorney fee in a discrimination action. But the United States Supreme Court has considered this very issue, and in the absence of state precedent, we look to federal case

---

[15]95 Wn.2d at 685.

[16]*Blair*, 108 Wn.2d at 570-71 (citing *Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).

law.[17] In *Blanchard v. Bergeron*,[18] the plaintiff recovered a jury verdict of $10,000, petitioned for a reasonable attorney fee in excess of $40,000, and the district court awarded $7,500. The plaintiff appealed, but the Fifth Circuit reduced the award to $4,000, pursuant to the contingent fee agreement for 40 percent of any damage award. The Supreme Court reversed, holding that it would be inconsistent with the policy and purposes of § 1988 to impose a contingent fee as a ceiling on a reasonable attorney fee:

> [Section 1988] contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less. Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount. The defendant is not, however, required to pay the amount called for in a contingent-fee contract if it is more than a reasonable fee calculated in the usual way.[19]

The Court admonished that the "centerpiece" of computing a reasonable attorney fee is the lodestar method—"no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation."[20] The Court concluded, "[t]he contingent-fee model, premised on the award to an attorney of an amount representing a percentage of the damages, is thus inappropriate for the determination of fees under § 1988."[21] The Court's decision in *Blanchard* was unanimous. No member of the United States Supreme Court has accepted the use of a contingent fee for computing a reasonable attorney fee under § 1988, despite their

---

[17]*Blair*, 108 Wn.2d at 570; *Fahn*, 95 Wn.2d at 683-84.

[18]489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989).

[19]489 U.S. at 93.

[20]489 U.S. at 94.

[21]489 U.S. at 96.

substantial disagreement whether a contingent fee agreement justifies a contingency enhancement.[22]

■ The Washington Supreme Court, like the United States Supreme Court, has adopted a lodestar approach for computing a reasonable attorney fee. In *Bowers v. Transamerica Title Ins. Co.*,[23] the Supreme Court adopted the lodestar approach to fee calculation under the Consumer Protection Act. Under *Bowers*, a trial court identifies the number of documented hours *reasonably* spent in litigation by each attorney, multiplies each attorney's contribution by his or her individual *reasonable* hourly fee, and adds the results to calculate total attorney fees.[24] The lodestar may be adjusted, if appropriate, to reflect either the contingent nature of the representation or the quality of the representation, provided those factors have not already been factored into the lodestar amount.[25]

Besides consumer protection claims, the Supreme Court has recently adopted this approach in determining fees awarded under the long arm statute.[26] In *Blair*, interpreting the requirements of an attorney fee award under RCW 49.60.030(2), the Supreme Court cited *Bowers* but did not

---

[22]*Compare* the majority opinion of Justice Scalia in *City of Burlington v. Dague*, 505 U.S. 557, 566, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992) ("Contingency enhancement is a feature inherent in the contingent-fee model (since attorneys factor in the particular risks of a case in negotiating their fee and in deciding whether to accept the case). To engraft this feature onto the lodestar model would be to concoct a hybrid scheme that resorts to the contingent-fee model to increase a fee award but not to reduce it. Contingency enhancement is therefore not consistent with our general rejection of the contingent-fee model for fee awards, nor is it necessary to the determination of a reasonable fee.") *with* the dissenting opinion of Justice Blackmun in the same case ("If a statutory fee consistent with market practices is 'reasonable,' and if in the private market an attorney who assumes the risk of nonpayment can expect additional compensation, then it follows that a statutory fee may include additional compensation for contingency and still qualify as reasonable."). 505 U.S. at 568. *See also* the majority, concurring, and dissenting opinions in *Delaware Valley*, 483 U.S. 711.

[23]100 Wn.2d 581, 597-98, 675 P.2d 193 (1983).

[24]*Bowers*, 100 Wn.2d at 597-98.

[25]*Bowers*, 100 Wn.2d at 597-99.

[26]*Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 149, 859 P.2d 1210 (1993) (lodestar approach used to determine fees awarded under RCW 4.28.185(5)).

expressly adopt the lodestar formula. Rather the court pointed to a variety of factors to consider:

> A trial court may consider a variety of factors when determining a reasonable attorney fee award, including the level of skill required by litigation, the time limitations imposed, the amount of potential recovery, the attorney's reputation, and the undesirability of the case.[27]

These are the same factors adopted by the Court for computing the lodestar. The Court of Appeals has sometimes,[28] but not always,[29] used the *Bowers* lodestar approach in computing a reasonable attorney fee under the Law Against Discrimination.

Defendant City has failed to cite a single case, state or federal, that adopted a contingent fee as a reasonable attorney fee under the Law Against Discrimination or under the federal civil rights statutes. This is not surprising, given the policies and purposes of the Law Against Discrimination, the repeated refusal of our Supreme Court to base a reasonable fee on the terms of the contract between the plaintiff and counsel, and the unequivocal rejection by the United States Supreme Court of the use of a contingent fee to set a reasonable attorney fee. In the context of a breach of trust, the Washington Supreme Court upheld a judgment that the defendant trustee pay a contingent fee to trust beneficiaries who had been forced to retain counsel to remedy the breach of trust.[30] But the policies in a trust case are significantly different from a discrimination case. Trusts are under the equity jurisdiction of the court, and the court approved a contingent fee

---

[27]108 Wn.2d at 570.

[28]*E.g., Burnside v. Simpson Paper Co.,* 66 Wn. App. 510, 532, 832 P.2d 537 (1992), *aff'd,* 123 Wn.2d 93, 864 P.2d 937 (1994); *Xieng v. Peoples Nat'l Bank,* 63 Wn. App. 572, 585-86, 821 P.2d 520 (1991), *aff'd,* 120 Wn.2d 512, 844 P.2d 389 (1993).

[29]*Carle v. McChord Credit Union,* 65 Wn. App. 93, 110-11, 827 P.2d 1070 (1992).

[30]*Allard v. First Interstate Bank,* 112 Wn.2d 145, 148, 768 P.2d 998, *modified,* 773 P.2d 420 (1989).

to make the beneficiaries whole for an "egregious" breach of trust by the trustee.[31]

We hold that the trial court abused its discretion in placing undue emphasis on Martinez's contingent fee agreement when determining a reasonable attorney fee for this case. Moreover, we note that the trial court seems to have misinterpreted the agreement as making McGavick's fee totally contingent on the jury verdict. This is incorrect for several reasons. First, the agreement called for a fixed fee of $2,500, with an additional fee computed at 50 percent of the verdict (subject to a credit for the $2,500 fixed fee). As it turned out, the noncontingent $2,500 portion of the fee was five-eighths of the total $4,000 "contingent" fee. Second, the agreement anticipated the possibility of an award of reasonable fees, calling for computation of the fee at an hourly rate of $125. If the court had in fact placed great weight on Martinez's agreement with McGavick, the court would have awarded the lodestar of $53,825.

Having found that it was error to place such great reliance on the contingent fee agreement, we must also consider the trial court's statement that he considered Martinez's "degree of success obtained as compared to the amount sought" in determining a reasonable fee. While the degree of success might arguably be an appropriate factor in some types of cases not involving the Law Against Discrimination,[32] under the facts of this case the trial court's heavy reliance on this factor was an abuse of discretion. First, discrimination is not just a private injury which may be compensated by money damages; the Legislature has declared that discrimination is "a matter of state concern, that . . . threatens not only the rights and proper privileges of its inhabitants but menaces the

---

[31]112 Wn.2d at 151-52.

[32]*See, e.g., Scott Fetzer*, 122 Wn.2d at 150 (quoting *Bowers*, 100 Wn.2d at 607 (Dimmick, J., concurring)).

institutions and foundation of a free democratic state."[33] Money damages are an inadequate yardstick for measuring the results of discrimination. Second, plaintiff was discriminated or retaliated against by the Tacoma Department of Human Rights, the very agency charged with eradicating discrimination. The identity of the defendant made the case both more important to bring and more difficult to win. Third, even if it were appropriate to reduce the reasonable fee to reflect the degree of success, it was error to reduce the fee from a lodestar of $53,825 to only $4,000, a reduction of 93 percent. In any event, that is not what the trial court did. Instead of computing a lodestar and discounting the lodestar by a reasonable factor, the court bypassed the lodestar and relied entirely on the contingent fee.

Defendant City cites several cases in an attempt to justify the trial court's reliance on "degree of success," but none supports the trial court's fee award. The City points to the statement of the United States Supreme Court in *Hensley v. Eckerhart* that "the extent of a plaintiff's success is a crucial factor that the district courts should consider carefully in determining the amount of fees to be awarded."[34] The City ignores the factual context of *Hensley* and the balance of the opinion. Plaintiffs brought the action on behalf of persons involuntarily confined at a state prison for the criminally insane. Plaintiffs voluntarily dismissed claims relating to damages and procedural due process, and prevailed at trial on claims relating to the constitutionality of treatment and conditions. The district court awarded fees for all hours spent on all claims, discounted only for one attorney's inexperience and failure to keep contemporaneous records. The Supreme Court held that where a plaintiff brought "distinctly different claims for relief that are based on different facts and legal theories," counsel's work on unsuccessful claims cannot be deemed to have been expended

---

[33]RCW 49.60.010.

[34]461 U.S. at 438 n.14.

on successful claims.[35] But where the plaintiff's claims involve a common core of facts and related legal theories, "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."[36] Finally, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."[37]

We do not read *Hensley* as supporting the City's theory that Martinez achieved "only limited success" in this case. Martinez and his wife brought an action for damages suffered by the unlawful actions of the City. Martinez prevailed on this, his only claim. The amount of damages does not erase the fact that Martinez won "substantial relief." The jury's rejection of Diana Martinez's claim for loss of consortium might justify a reduction in the fee, but only in proportion to the amount of time devoted to her claim. No one has contended that McGavick spent 93 percent of his time on Diana Martinez's claim for loss of consortium, and this factor cannot justify the fee award.

The City also relies on *Farrar v. Hobby*,[38] in which the United States Supreme Court affirmed the denial of any attorney fees to a plaintiff who recovered only "nominal" damages in a civil rights action. In *Farrar*, the plaintiff sought to recover $17 million from six defendants, and after 10 years of litigation, the jury found that one defendant had deprived plaintiff of a civil right, but that the deprivation did not cause any damage to the plaintiff.[39] The Court awarded "nominal damages" of $1 under prior law requiring such an award for a violation of procedural due process even when the plaintiff cannot

---

[35]461 U.S. at 434-35.

[36]461 U.S. at 440.

[37]461 U.S. at 440.

[38]506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992).

[39]506 U.S. at 106.

prove actual injury.[40] The Supreme Court held that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, [citation omitted], the only reasonable fee is usually no fee at all."[41] *Farrar* does not support the fee award in this case. Martinez proved every element of his claim, including damages. The damage award was not "nominal" in any sense of the word.[42]

We cannot uphold the attorney fee award in this case because it undermines the legislative purposes of enabling vigorous enforcement of the Law Against Discrimination and making it financially feasible to litigate discrimination claims. Attorney McGavick undertook a difficult discrimination case against a unique defendant, the agency charged with preventing discrimination. He won the case, vindicating Martinez's right to be free from discrimination and retaliation based on race and national origin. The trial court did not question that McGavick's services were worth $125 per hour, but then awarded him less than $9 per hour. We would discourage attorneys from representing plaintiffs in discrimination claims if we were to uphold this award. The inevitable result would be to make it more difficult for persons suffering from discrimination to obtain competent legal representation. We reverse and remand for recomputation of a reasonable fee.

## Cost Award

Martinez appeals the trial court's failure to award all of

---

[40]506 U.S. at 112.

[41]506 U.S. at 115 (citation omitted).

[42]Defendant City also relies on *Corder v. Brown*, 25 F.3d 833 (9th Cir. 1994), in which plaintiffs sought $1,000,000 in compensatory damages and $1,000,000 in punitive damages from each of 45 defendants. The jury awarded plaintiffs $2 in compensatory damages from each of three defendants, for a total of $6, plus $24,000 in punitive damages. The Ninth Circuit reversed and remanded to allow the trial court to reconsider attorney fees in light of *Farrar v. Hobby*, which had not been decided at the time of the fee award. Like *Farrar*, *Corder* involved damages accurately characterized as nominal.

the costs incurred by his attorney. The court awarded only the costs of service of process and the costs of obtaining deposing witnesses and obtaining deposition copies. The written order fails to explain why the court awarded these costs and denied others. It appears from the oral decision that the trial court simply awarded costs allowed by the general costs statute, RCW 4.84.010.

■ ■ The trial court abused its discretion in limiting costs to those recoverable under RCW 4.84.010. Although costs are limited in most actions, our Supreme Court has held that costs are more liberally allowed under the Law Against Discrimination:

> [W]e adopt the federal rule allowing more liberal recovery of costs by the prevailing party in civil rights litigation, in order to further the policies underlying these civil rights statutes: to make it financially feasible to litigate civil rights violations, to enable vigorous enforcement of modern civil rights legislation while at the same time limiting the growth of the enforcement bureaucracy, to compensate fully attorneys whose service has benefited the public interest, and to encourage them to accept these cases where the litigants are often poor and the judicial remedies are often nonmonetary.[43]

Thus, our Supreme Court has held that in discrimination cases costs may include out-of-pocket expenses for transportation, lodging, parking, food and telephone expenses, photocopying, and paralegal expenses.[44]

We reverse the trial court's cost award and remand so that the trial court may redetermine costs in light of this decision.

### Attorney Fee on Appeal

Martinez seeks attorney fees on appeal. RAP 18.1; RCW 49.60.030(2). RAP 18.1 provides for an award of attorney fees on review where a statute authorizes such an award.

---

[43]*Blair*, 108 Wn.2d at 573 (citation omitted).

[44]*Blair*, 108 Wn.2d at 572-74.

Martinez has prevailed on appeal and is entitled to fees.[45] Our Commissioner shall determine reasonable fees upon Martinez's compliance with RAP 18.1.

## Conclusion

In summary, neither the terms of Martinez's fee agreement nor the size of the jury verdict justified this fee award. We reverse and remand to the trial court for recalculation of a reasonable fee and costs in light of the principles discussed in this opinion.

BRIDGEWATER, J., concurs.

SEINFELD, C.J. (dissenting) — I respectfully dissent. To reverse the attorney's fee award, we must find that the trial court manifestly abused its discretion. *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 65, 738 P.2d 665 (1987); *Carle v. McChord Credit Union*, 65 Wn. App. 93, 111, 827 P.2d 1070 (1992). For us to make this finding, the record must show that the trial court exercised its considerable discretion on untenable grounds, for untenable reasons, or in a manifestly unreasonable fashion. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Considering the paucity of the record before us, I believe there is no basis to conclude that the trial court's refusal to rely on the lodestar formula was a manifest abuse of discretion.

Our primary concern in reviewing an attorney fee award is whether it was reasonable. *Allard v. First Interstate Bank*, 112 Wn.2d 145, 153, 768 P.2d 998, 773 P.2d 420 (1989). In making its award, the trial court must consider the factors articulated in RPC 1.5(a). One such factor is the attorney-client fee arrangement. *Allard*, 112 Wn.2d at 149-50. "The presence of a pre-existing fee arrangement may aid in determining reasonableness.

---

[45]*Xieng v. Peoples Nat'l Bank*, 120 Wn.2d 512, 533, 844 P.2d 339 (1993).

" ' "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating attorney's fee expectations when he accepted the case." ' " *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (1974))).

Here, the trial court stated, "I think I should clarify what I did before in reaching my decision on attorney's fees — I considered all the factors that the cases require that I consider." The trial court did not use the contingent fee arrangement as a ceiling on the amount of fees awarded, as did the trial court in *Blanchard.* Rather, it properly considered the attorney-client fee arrangement along with the other factors. Had it not done so, and instead relied solely on the lodestar formula as Martinez argues, it would have erred. *See Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 150-51, 859 P.2d 1210 (1993).

Further, a comparison of plaintiff's recovery to his demand is relevant and critical in awarding attorney's fees.

"Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Riverside v. Rivera*, 477 U.S. 561, 585[, 106 S. Ct. 2686, 2700, 91 L. Ed. 2d 466] (1986) (Powell, J., concurring in judgment). Such a comparison promotes the court's "central" responsibility to "make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989). Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, see *Hensley* [ *v. Eckerhart*], 461 U.S. [424,] 430, n.3, [103 S. Ct. 1933, 1937-38, n.3, 76 L. Ed. 2d 40 (1983), ] or multiplying "the number of hours reasonably expended . . . by a reasonable hourly rate[.]" [*Hensley*, 461 U.S.] at 433.

*Farrar v. Hobby*, 506 U.S. 103, 114-15, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992).

Following federal case law, the Washington Supreme Court held that the "extent of the plaintiff's success [on his discrimination claim] is a crucial factor in determining the proper amount of attorney fees under a civil rights action." *Blair v. Washington State Univ.*, 108 Wn.2d 558, 572, 740 P.2d 1379 (1987) (citing *Hensley*, 461 U.S. 424). The Washington Supreme Court reiterated its reliance on this factor in *Scott Fetzer*:

> [A] lodestar figure which grossly exceeds the amount involved should suggest a downward adjustment. . . . "[T]he lodestar method, having no relation to the amount involved, may lead to an attorney's fee which is equal to or exceeds the judgment recovered. . . ." *Bowers* [ *v. Transamerica Title Ins. Co.*, 100 Wn.2d 581,] 607[, 675 P.2d 193 (1983)] (Dimmick J., concurring in part, dissenting in part). While the amount in dispute does not create an absolute limit on fees, that figure's relationship to the fees requested or awarded is a vital consideration when assessing their reasonableness.

*Scott Fetzer*, 122 Wn.2d at 150.

The City's characterization of the $8,000 verdict as "only limited success" appears accurate in light of plaintiffs' complaint seeking $4,000,000, their settlement demand of $240,000, and their argument to the jury for $295,238. Thus, the trial court's reliance on this factor was entirely appropriate.

I share the majority's concern for those seeking redress for discriminatory acts and agree with its interpretation of the statute's intent. However, this is a manifest abuse of discretion case. The issue before us is not whether we would have awarded a different amount than the trial court, but whether the trial court abused its discretion. The majority's effort to make it "financially feasible to litigate discrimination claims" ignores the fact that appellant failed to provide a complete trial record. Thus, we do not know the particular facts of this case. Furthermore, the majority's ruling annuls the trial court's considerable

discretion to award attorney's fees based on the facts of the particular case before it.

Martinez neither presents persuasive argument nor identifies any unresolved legal principles in support of his contention that the significance of this case caused the attorney's fee award to be inappropriate. Nor does the record support the majority's speculative statement that the "identity of the defendant made the case . . . more difficult to win." Absent a trial record, we know few facts about the underlying incident or the procedural details.

In view of (1) the trial court's broad discretion to determine attorney's fees; (2) the trial court's superior position to determine the subjective degree of success of the plaintiff; (3) the trial court's consideration of the factors set forth in RPC 1.5(a); and (4) this court's inability to know what evidence of discrimination Martinez presented to the jury due to the absence of a full trial record, we are not in a position to second guess the trial court's determination of a reasonable attorney fee. Moreover, the majority's remand for "recalculation of a reasonable fee" provides no guidelines to aid the trial court in revisiting its earlier reasoned decision.

I would affirm.

Review denied at 130 Wn.2d 1010 (1996).