

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CYMA G. TUPAS, a.k.a. CYMA G. GREGORIOS,

Appellant,

v.

STATE OF WASHINGTON DEPARTMENT OF ECOLOGY,

Respondent,

KEVIN FITZPATRICK; GERALD SHERVEY; AND WENDY HOLTON,

Defendants.

No. 72259-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 7, 2015

LAU, J. — This case involves an attorney fees and cost dispute under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. The jury awarded Cyma Tupas $329,580 in damages against her former employer, the Washington State Department of Ecology (the Department), on her failure to accommodate disability claim. It found no liability and awarded no damages on her

discrimination and retaliation claims. The trial court declined to apply a 1.5 multiplier and reduced Tupas' request for fees and costs by 25 percent. Tupas contends (1) the court's findings are insufficient to permit meaningful appellate review of its award for attorney fees and costs, (2) the court improperly relied on a risk factor in declining the multiplier, and (3) the court erred by declining to award prejudgment interest on the back pay award. Because our review of the reasonableness of fees and cost award is hampered by the trial court's inadequate findings of fact and conclusions of law, and the trial court relied on an erroneous view of the law when it denied the multiplier, we reverse the fees and cost award and remand for further proceedings on the existing record and consistent with this opinion. But because the court properly denied Tupas' request for prejudgment interest on the back pay award on nonwaiver of sovereign immunity grounds, we affirm the denial of prejudgment interest. We reverse and remand, in part, and affirm, in part.

## FACTS

Cyma Tupas worked in technical and scientific positions for the Department from 1987 until her involuntary disability separation in October 2012.

In November 2012, Tupas filed a lawsuit against the Department and three supervisors alleging national origin discrimination and retaliation.[1] She alleged that, beginning in 2007, less qualified Caucasian workers were selected for promotion over her and the Department retaliated when she complained.

---

[1] At oral argument, Tupas claimed her retaliation claim was based on her disability. Her amended complaint and the jury instructions make clear that her retaliation claim related to reporting national origin discrimination.

-2-

In October 2013, Tupas filed an amended complaint abandoning her claim for national origin discrimination. She realleged her national origin retaliation claim[2] and also alleged two new claims for disability discrimination and failure to accommodate a disability. She alleged that her supervisors failed to accommodate ongoing medical conditions and discriminated against her because of those conditions.

After 10 days of trial, the jury found the Department liable on the failure to accommodate disability claim and awarded damages for back pay, front pay, and emotional distress totaling $329,580.[3] It found no liability on her remaining claims.

On April 30, 2014, Tupas filed motions seeking an award of attorney fees, costs, and prejudgment interest on her past wages in the total amount of $543,690. She also requested a contingency multiplier of 1.5 to account for the risk factor inherent in a contingency fee case. The multiplier would have increased the fees award by $271,847.50. The trial court entered 15 findings of fact and conclusions of law to support its fees and cost award. It declined to grant the multiplier, reduced the fees and costs requested by 25 percent and declined to award prejudgment interest.[4]

Tupas appeals the trial court's order on attorney fees, costs, and prejudgment interest.[5]

---

[2] Tupas is Filipina.

[3] The jury awarded $96,580 for lost wages and benefits, $225,000 for lost future wages and benefits and $8,000 for emotional distress damages.

[4] Tupas contends the trial court should have allowed the entire fees amount requested or applied the contingent multiplier.

[5] Our record contains no transcript of the hearing on attorney fees and costs.

## ANALYSIS

Tupas contends that the trial court's findings and conclusions supporting its 25 percent reduction of the lodestar award are insufficient to permit meaningful appellate review.[6] We agree.

For claims arising under Washington's Law Against Discrimination (WLAD), courts use the lodestar method to calculate reasonable attorney fees. Martinez v. City of Tacoma, 81 Wn. App. 228, 239, 914 P.2d 86 (1996). Under this method the trial court must determine the number of hours an attorney reasonably expended in pursuit of the litigation and then multiply that by the attorneys' reasonable hourly rates. Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 593-94, 675 P.2d 193 (1983). The lodestar functions as the presumptive reasonable fee. Chuong Van Pham v. Seattle City Light, 159 Wn.2d 527, 542, 151 P.3d 976 (2007).

The hours "reasonably expended" for the purposes of the lodestar calculation must be spent on claims with a "common core" of facts and related legal theories to the successful claims. Pham, 159 Wn.2d at 538. A court should discount hours spent on unsuccessful claims, duplicate or wasted effort, or otherwise unproductive time. Pham, 159 Wn.2d at 538. But if efforts to segregate successful and unsuccessful claims are unavailing, a trial court does not abuse its discretion by including related claims in a fee award without reduction. Broyles v. Thurston Cnty., 147 Wn. App. 409, 450, 195 P.3d 985 (2008).

---

[6] There is no dispute on the court's findings of reasonableness associated with the attorneys' hourly rates.

When determining an award of attorney fees, the court must enter findings of fact and conclusions of law. Berryman v. Metcalf, 177 Wn. App. 644, 657-58, 312 P.3d 745 (2013). These "findings must show how the court resolved disputed issues of fact and the conclusions must explain the court's analysis." Berryman, 177 Wn. App. at 658. An explicit hour-by-hour analysis of each lawyer's time sheet is not required if the award is made with consideration of the relevant factors and the reasons provided for the amount awarded are sufficient to permit review. Absher Const. Co. v. Kent School Dist. No. 415, 79 Wn. App. 841, 848, 917 P.2d 1086 (1995).

"Trial courts must independently decide what represents a reasonable amount of attorney fees; they may not merely rely on the billing records of the prevailing party's attorney." Mayer v. City of Seattle, 102 Wn. App. 66, 79, 10 P.3d 408 (2000) (citations omitted). We review a trial court's award of attorney fees for a manifest abuse of discretion. Pham, 159 Wn.2d at 538. A court abuses its discretion when it exercises it in a manifestly unreasonable manner or bases it upon untenable grounds or reasons. State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). But where the trial court has not provided sufficient analysis to permit meaningful appellate review, remand is the appropriate remedy. Brand v. Dep't of Labor Indus., 139 Wn.2d 659, 67-75, 989 P.2d 1111 (1999).

The trial court entered findings of fact 10 and 11 supporting its 25 percent reduction of the fees requested:

> It is challenging to determine precisely how much time spent [sic] plaintiff's counsel spent preparing and presenting evidence on the successful, as opposed, to non-successful claims. Certainly, some background as to Ms. Tupas's employment history at the Department of Ecology would have been relevant background for evaluating the successful failure to accommodate claim. In addition, both parties were entitled to present lay testimony as to incidents that

ultimately resulted in Ms. Tupas's disability separation. The court finds and concludes that a 25% reduction in the hours of preparation and trial is appropriate to account for time spent on the unsuccessful claims that do not encompass a "common core of facts and related legal theories" as the failure to accommodate claim. See Steel v. Lundgreen, [96 Wn. App. 773, 982 P.2d 619] (1999). Accord, Pham v. City Light, [159 Wn.2d 527, 151 P.3d 976] (2007). This would result in an adjusted lodestar of $407,771.

Clerk's Papers (CP) at 691.

Because of the approach taken by the court, the issue of "block billing" raised by the Department is unnecessary to address. In addition, the court notes that many of the examples raised by the Department as examples of "block billing" are fairly specific.

CP at 692.

These findings show that the trial court did not resolve the "block billing" objection by the Department and reduced the fees award by 25 percent to take into account time expended on "unsuccessful claims" not involving "common core of facts and related legal theories."

Washington courts frequently rely on federal authority involving attorney fees issues when interpreting the WLAD on fee issues. Blair v. Wash. State Univ., 108 Wn.2d 558, 570, 740 P.2d 1379 (1987). Our state cases have consistently relied on Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), a case involving the Federal Civil Rights Attorney's Fees Awards Act.

In Bright v. Frank Russell Investments, No. 72663-3-I, 2015 WL 6681033 (Wn. App. Nov. 2015), we recently addressed a WLAD fees dispute where the plaintiff, like Tupas, prevailed on some but not all of her claims. We relied principally on Hensley's analysis of the proper relationship between the results obtained to an award of attorney fees to determine whether the reasonably expended hours portion of the lodestar calculation was proper.

The Court stated:

> "It may well be that cases involving [] unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a <u>common core of facts or will be based on related legal theories</u>. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. <u>Instead the [] court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.</u>"

The Supreme Court went on to state:

> "Where a plaintiff has obtained excellent results,[7] his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. <u>The result is what matters.</u>"

Notably, the Supreme Court made the following observation while rejecting an argument very similar to the one Frank Russell now makes:

> "We agree with the District Court's rejection of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."

---

[7] Finding of fact 9 states, "The quality of Plaintiff's attorneys on this case was excellent." CP at 691.

Bright, 2015 WL 6681033 at *3 (footnotes omitted) (quoting Hensley, 461 U.S. at 435-36) (emphasis in original).

In affirming the trial court's fees award for Bright's successful and unsuccessful claims, we explained that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome" and "courts should treat claims as separate lawsuits when they are based on different facts and legal theories." Bright, 2015 WL 6681033 at *4 (emphasis in original).

> Thus, courts should treat claims as separate lawsuits when they are both factually and legally unrelated. Conversely, when a plaintiff prevails and the claims "involve a common core of facts or . . . related legal theories," the court should not view the lawsuit "as a series of discrete claims."

Bright, 2015 WL 6681033 at *4 (quoting Hensley, 461 U.S. at 435) (emphasis in original).

It appears that the trial court did not weigh the considerations discussed in Hensley when it reduced the lodestar amount by a fixed percentage. Our review of this issue is also hampered by the inadequate findings of fact. The findings of fact on this question are conclusory. For example, the trial court made no findings that explain how it arrived at the specific percentage reduction and why the unsuccessful claims do not encompass a common core of facts and related legal theories. While we acknowledge that assessing proper fees awards can be challenging, "it is the judge who has watched the case unfold and who is in the best position to determine which hours should be included in the lodestar calculation." Hensley, 461 U.S. at 437. "That is why the law requires us to defer to the trial court's judgment." Pham, 159 Wn.2d at 540. But that judgment must be reduced to adequate written findings of fact and conclusions of law

that inform an appellate court on how the court resolved disputed factual issues and the conclusions must explain the court's analysis. Here the court entered two conclusory findings to support its fees reduction and did not resolve the objections raised by the Department.[8]

In Hensley, the court emphasized that "the most critical factor is the degree of success obtained." 461 U.S. at 436.

> Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.
>
> . . . .
> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

Hensley, 461 U.S. at 436.

Regardless of the how the court exercises its discretion, it must enter findings and conclusions:

> It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award. When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.

Hensley, 461 U.S. at 437.

---

[8] See, Defendant's Objection to Plaintiff's Motion for Award of Attorney Fees and Cost Bill. CP at 547.

Tupas argues that under <u>Hensley</u>, no reduction was necessary where the trial court found it "challenging to determine precisely how much time" Tupas "spent preparing and presenting evidence on the successful, as opposed, to non-successful claims." CP at 691. The Department argues that <u>Hensley</u> stands for the proposition that where a court is unable to identify specific attorney hours that should be eliminated, "it may simply reduce the award." <u>Hensley</u>, 461 U.S. at 436-37. On this limited record, neither party is correct.

<u>Hensley</u> does not grant a trial court unlimited discretion to reduce a fee award as discussed above.

Cases after <u>Hensley</u> indicate that even greater scrutiny will be applied when a trial court imposes a significant reduction to a fee award. In <u>Gates v. Deukmejian</u>, 987 F.2d 1392 (9th Cir. 1992), the court explained that the "meat-axe approach" utilized by the district court when it applied an across the board percentage reduction in an attorney fee award did not excuse it from entering findings. Instead, the court explained that large reductions to a fee award will be examined more closely:

> Thus, percentages indeed are acceptable, and perhaps necessary, tools for district courts fashioning reasonable fee awards. However, decisions of district courts employing percentages in cases involving large fee requests are subject to heightened scrutiny and the use of percentages, in any case, neither discharges the district court from its responsibility to set forth a "concise but clear" explanation of its reasons for choosing a given percentage reduction nor from its duty to independently review the applicant's fee request.

<u>Gates</u>, 987 F.2d at 1400.

Nor is it enough for a trial court to merely identify the correct legal rules or factors implicated by a fees award. In <u>Padgett v. Loventhal</u>, 706 F.3d 1205, 1208 (9th Cir. 2013), the court reasoned, "identifying the legal rules that guide the calculation of fees,

-10-

and then producing a number that is purportedly a result of that calculation, does not allow us to review the decision for an abuse of discretion." Padgett, 706 F.3d at 1208. Indeed, "the mandate that district courts show their work is all the more important in cases where, as here, there are many overlapping claims and a very mixed result." Padgett, 706 F.3d at 1209.

In sum, under Berryman, meaningful findings and conclusions must be entered that explain an award of attorney fees and the considerations for awarding fees discussed in Hensley apply here.[9]

Cost Award

Tupas argues that the trial court abused its discretion by reducing her cost award by 25 percent, in the same proportion as the reduced attorney fees awarded.[10]

Under the WLAD, an aggrieved party may recover the costs of the suit and any other remedy authorized by the United States Civil Rights Act. RCW 49.60.030(2); Blair v. Wash. State Univ., 108 Wn.2d 558, 572-73, 740 P.2d 1379 (1987). The WLAD provides no direct limitation on the costs recoverable in a discrimination action under chapter 49.60 RCW:

> Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).

---

[9] As noted above, a trial court may properly reduce a fee award by a fixed percentage provided it enters findings of fact to support the reduction and explains its analysis.

[10] Tupas submitted adequate documentation of her costs expended in this action.

RCW 49.60.030(2) (emphasis added).

In Blair, the Supreme Court adopted "the federal rule allowing more liberal recovery of costs . . . in order to further the public policies underlying civil rights statutes." Blair, 108 Wn.2d at 573. Those policies include:

> to make it financially feasible to litigate civil rights violations, to enable vigorous enforcement of modern civil rights legislation . . . to compensate fully attorneys whose service has benefitted the public interest, and to encourage them to accept these cases where the litigants are often poor and the nonjudicial remedies are often nonmonetary.

Blair, 108 Wn.2d at 573. Recovery should include expenses that are "reasonable and necessary in the preparation and trial of the case." Blair, 108 Wn.2d at 573-74. This may include "out-of-pocket expenses for transportation, lodging, parking, food and telephone expenses, photocopying, and paralegal expenses." Martinez, 81 Wn. App. at 245. Statistician, computer expenses, supplies, equipment and depositions are all allowable costs for civil rights actions. Blair, 108 Wn.2d at 574. Expert witnesses are allowable costs. Johnson, 177 Wn. App. 684, 700, 313 P.3d 1198 (2013).

Tupas submitted written documentation of costs and expenses totaling $18,573. She also submitted her attorney's declaration attesting to the accuracy of the costs and expenses incurred by the law firm on behalf of Tupas. The court's sole finding of fact and conclusion of law on costs states "[p]laintiff's costs are reasonable and fully recoverable, in the same proportion as the attorney fees." CP at 692.

The Department's brief devotes no discussion or analysis to the cost issue. We conclude the trial court improperly reduced the total costs by 25 percent without considering the rule allowing for liberal cost recovery in civil rights actions and whether the costs were reasonable and necessary expenditures in the preparation and trial of

this litigation. While a fixed percent reduction may be appropriate in the attorney fees award context, the standards governing award of costs is different for award of attorney fees.

The trial court based its cost award on an erroneous view of the law. We reverse the cost award. On remand the court should determine the proper amount of costs in light of the considerations discussed above and make sufficient findings of fact and conclusions of law to support any award of costs.

Contingency Multiplier

Tupas challenges the trial court's disallowance of a 50 percent (1.5) contingency multiplier on two grounds. First, she argues the court placed undue emphasis on the risk of litigation to the exclusion of other relevant factors. Second, she contends the court failed to consider the risk from the outset of litigation.[11]

In declining the multiplier, the court concluded that this was a low risk case, due in part, to the Department's factual concessions.

> In determining that a multiplier is not warranted, the court considered, among other factors, the Department's concession that Ms. Tupas was disabled. It was also conceded that Ms. Tupas was terminated because of her disability and because the Department concluded it would be unable to accommodate her. This was not a particularly high risk claim for plaintiff's counsel to take on. Some of the other factors considered by the court are briefly summarized in Footnote 2 to this order.[12]

---

[11] Tupas contends the court should have awarded her the entire lodestar amount or applied a multiplier.

[12] Footnote 2 states as follows:
> Because of the court's approach to the amount of fees (See Finding 10), the court did not reduce the award by arguably redundant billing, such as having two lawyers attend some depositions or the conferences that occurred among the three lawyers handling this case.

CP at 691.

-13-

CP at 692.

The court may consider adjusting the award to reflect additional factors once the lodestar has been calculated. Pham, 156 Wn.2d at 540.

A party seeking a deviation from the lodestar amount bears the burden of justifying the deviation. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 334, 858 P.2d 1054 (1993). Generally, "adjustments of the lodestar are discretionary and rare." Sanders v. State, 169 Wn.2d 827, 869, 240 P.2d 827 (2010).

Adjustments to the lodestar fall into two general categories: the contingent nature of success and the quality of the work performed. Pham, 159 Wn.2d at 541. The contingency adjustment is based on the principle that attorneys will refuse high risk contingency cases unless they receive a premium for the risk of receiving no recovery at all. Pham, 159 Wn.2d at 541. A contingency adjustment should not include the difficulty in establishing the merits of the case, since this will be reflected in the number of hours an attorney spends on a case and the level of skill that an attorney must have to prevail. Pham, 159 Wn.2d at 541. Furthermore, a contingency multiplier should be denied where the attorney's hourly rate "comprehends an allowance for the contingent nature of the availability of fees." Bowers, 100 Wn.2d at 599.

Despite a presumption that the lodestar represents a reasonable fee, an exception to the presumption exists in antidiscrimination cases because the law "places a premium on encouraging private enforcement and . . . the possibility of a multiplier works to encourage civil rights attorneys to accept difficult cases." Berryman v. Metcalf, 177 Wn. App. 644, 666, 312 P.3d 745 (2013) (quoting Pham, 156 Wn.2d at 542). In this type of case, "it is possible the lodestar figure does not adequately account for the high

risk nature of a case." Berryman, 177 Wn. App. at 666. Citing Pham, we noted in

Berryman, "Most of the [Washington] cases in which multipliers have been considered

were brought under [liberally construed] remedial statutes with fee-shifting provisions

designed to further the statutory purposes." Berryman, 177 Wn. App. at 682 (listing

cases where plaintiffs ended up with a multiplier).

Although the determination of whether a lodestar multiplier is warranted is largely

a question left to the discretion of the trial court, in reaching its conclusion the court

must consider the risk faced by plaintiff's attorneys at the outset of the litigation:

> In adjusting the lodestar to account for this risk factor, the trial court must
> assess the likelihood of success at the outset of the litigation. This is
> necessarily an imprecise calculation and must largely be a matter of the
> trial court's discretion. Nevertheless certain guiding principles should be
> followed [T]o the extent, if any, that the hourly rate underlying the lodestar
> fee comprehends an allowance for the contingent nature of the availability
> of fees, no further adjustment duplicating that allowance should be made.

Pham, 159 Wn.2d at 542 (quoting Bowers, 100 Wn.2d at 598-99) (emphasis added).

In considering the propriety of a contingency adjustment, we have held that the

trial court abuses its discretion when it takes irrelevant factors into account.

Tupas claims the court failed to consider the contingent nature of success,[13] the

Department's "nuisance value" offer to settle the case, the Department's stance that

Tupas' disability disqualified her for work in her profession, Tupas speaks English as a

second language, and the quality of representation.

The Department contends the court considered these factors in its lodestar

calculation. In particular, the Department argues that a discrimination suit's complexity

and the quality of the legal services are already factored in the lodestar calculation.

---

[13] Tupas' attorneys represented her in this case on a contingency fee basis.

See <u>Bowers</u>, 100 Wn.2d at 593-94, 598-99. The Department also argues that the court's findings of fact 12 properly considered the risk of a contingency fee case.

As noted above, the rule is well settled. When assessing whether a contingency multiplier is warranted, the trial court must assess the likelihood of success at the outset of litigation. <u>Bowers</u>, 100 Wn.2d at 598 (citing Samuel R. Berger, Court Awarded Attorneys' Fees: What is "Reasonable"?, 126 U. Pa. L. Rev. 281, 324-25, on the purpose of the contingency adjustment).

The trial court's findings of fact 12 are inadequate to determine whether it assessed the chances of success at the outset of the litigation. The findings mention the court considered "other factors" and also referenced footnote 2. The findings of fact fail to state what those "other factors" are in denying the multiplier. Footnote 2 merely recites that the court did not reduce the award for redundant billing because of its fixed 25 percent reduction approach.

It appears the trial court may have disallowed the multiplier based on an improper grounds. Instead of relying on either an assessment of the risk factor or the quality of work, the court relied on an irrelevant factor—its 25 percent fee reduction approach. "In considering the propriety of a contingency adjustment, we have held that the trial court abuses its discretion when it takes irrelevant factors into account." <u>Pham</u>, 159 Wn.2d at 543.

We do not know if the trial court considered Tupas' arguments in support of the multiplier. The court's resolution of this issue lacks necessary findings to show how the court resolved disputed issues of fact and the conclusions must explain the court's analysis.

Given the inadequate findings and questionable conclusions, we remand to the trial court to reconsider the contingency multiplier request and for the entry of proper findings of fact and conclusions of law that explain the basis for the court's decision.[14]

Prejudgment Interest

Tupas contends that she was entitled to prejudgment interest under chapter 49.60 RCW to the same extent as if she prevailed against a private employer. She asserts that RCW 40.60.040(11)'s definition of "employer" includes the Department, indicating the legislature's intent to impose liability on the Department to the same extent as a private employer.

The trial court denied Tupas' request for prejudgment interest on the liquidated portion of her damages.

The parties do not dispute that in promulgating the WLAD, Washington waived its sovereign immunity and allowed employees to recover damages under the WLAD against the state. The dispute here involves whether this waiver applies to prejudgment interest.

This question is controlled by Norris v. State, 46 Wn. App. 822, 733 P.2d 231 (1987). A jury awarded the plaintiff substantial damages in his personal injury negligence lawsuit against the state. In Norris, the court held that when the legislature enacted RCW 4.56.115,[15] it waived sovereign immunity for post judgment interest on

---

[14] We express no opinion on the decision to award or not award a multiplier in this case. That decision remains within the trial's discretion on remand.

[15] RCW 4.56.115 currently provides in relevant part:
In any case where a court is directed on review to enter judgment on a verdict or in any case where a judgment entered on a verdict is wholly or partly affirmed on review, interest on the judgment or on that portion of the

tort claims. Citing the principle of statutory construction "[e]xpressio unius est exclusio alterius"—specific inclusions exclude implication—the court held that because the statute waived liability for post judgment interest, but did not mention prejudgment interest, the state's sovereign immunity remained intact. "The State has not consented to prejudgment interest on tort claims against it." Norris, 46 Wn. App. at 825. Tupas fails to address Norris.

In Foster v. Wash. Dep't of Transp., 128 Wn. App. 275, 115 P.3d 1029 (2005), the court reaffirmed its holding in Norris.

> We held that when the legislature enacted RCW 4.56.115, it had expressly waived sovereign immunity from post judgment interest on tort claims, while at the same time, by necessary implication, not waiving sovereign immunity from pre judgement interest on tort claims. Since 1987, the legislature has met many times without abrogating or altering Norris.

Foster, 128 Wn. App. at 279.

The trial court properly declined to award prejudgment interest.

## Attorney Fees and Costs on Appeal

Tupas requests an award of reasonable attorney fees and costs on appeal. Under RCW 49.60.030(2), a successful plaintiff who also prevails on appeal is entitled to an award of reasonable attorney fees and costs on appeal. Martini v. Boeing Co., 137 Wn.2d 357, 377, 971 P.2d 45 (1999). Because Tupas prevails on appeal, she is entitled to an award of attorney fees subject to compliance with RAP 18.1. She is also entitled to an award of costs on appeal.

---

judgment affirmed shall date back to and shall accrue from the date the verdict was rendered.
(emphasis added).

## CONCLUSION

For the reasons discussed above, we reverse the award of attorney fees and costs and remand for reconsideration of a multiplier and fees and costs on the existing record and for entry of necessary findings of fact and conclusions of law consistent with this opinion. The findings must indicate how the court resolved issues of fact and the conclusions must explain the court's analysis in sufficient detail. We affirm the trial court's denial of prejudgment interest under Norris. We award reasonable attorney fees and costs conditioned on compliance with RAP 18.1.

WE CONCUR: