

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JULIE BERRYMAN, | ) | No. 68544-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| AKEEM METCALF and JANE DOE | ) | |
| METCALF, and the marital community | ) | |
| comprised thereof, and RITA METCALF | ) | |
| and JOHN DOE METCALF, and the | ) | |
| marital community comprised thereof | ) | |
| and JEFFREY WALKER and JANE | ) | |
| DOE WALKER, and the marital | ) | |
| community comprised thereof, and | ) | |
| MICHAEL A. WARD and JANE DOE | ) | |
| WARD, and the marital community | ) | PUBLISHED OPINION |
| thereof, | ) | |
| | ) | FILED: November 12, 2013 |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FARMERS INSURANCE COMPANY | ) | |
| OF WASHINGTON, | ) | |
| | ) | |
| Appellant. | ) | |

BECKER, J. — The trial court approved as reasonable a total of 468.55 hours billed by two attorneys for taking a minor soft tissue injury case through a short trial de novo, where the defendant did not improve its position after a mandatory arbitration. The court then applied a multiplier of 2.0 because

counsel, working on a contingent fee arrangement, substantially risked receiving no compensation or inadequate compensation. Under the circumstances of this unexceptional case, the fee award of nearly $292,000 was an abuse of discretion. We reverse the award of attorney fees and remand for meaningful consideration of what constitutes a reasonable fee. However, we find no abuse of discretion in the trial court's evidentiary rulings and consequently hold that the defendant is not entitled to a new trial.

## FACTS

This case arose from a three-car collision on February 24, 2007. Plaintiff Julie Berryman was in her Chevrolet Caprice, preparing to turn into a driveway. An uninsured driver in a Dodge Caravan rear-ended the Caprice. Another uninsured driver, who was driving a Honda Accord, rear-ended the Dodge and pushed it into Berryman's Caprice. Berryman felt pain in her neck and back that night and sought treatment from a chiropractor two days later. Over the next three and a half years, she continued with chiropractic treatment.

Berryman had underinsured motorist coverage from Farmers Insurance Company of Washington. Berryman received personal injury protection payments of $7,393.47 from Farmers.

In May 2009, Berryman retained the Premier Law Group, PLLC. She signed a contingency fee agreement. Berryman sued the uninsured drivers in superior court in January 2010. The uninsured drivers defaulted. Farmers intervened to assert the defenses the drivers would have presented.

Berryman certified that her claim for damages was not in excess of $50,000. The case was transferred to mandatory arbitration under chapter RCW 7.06. The arbitration took place on December 10, 2010. The arbitrator awarded Berryman $13,724 in special damages and $22,000 in general damages, for a total of $35,724 in compensatory damages.

Farmers requested trial de novo. Berryman offered to settle for $30,000. Farmers did not accept the offer.

Farmers conceded before trial that according to the police report, the uninsured drivers were at fault.[1] Farmers made no attempt thereafter to prove anyone else was at fault. The issues for trial were causation and whether the medical expenses Berryman claimed were necessary and reasonable.[2]

Farmers retained Dr. Allan Tencer, a University of Washington professor of biomechanical engineering, to testify at trial about the forces involved in the accident. Dr. Tencer prepared a report stating his opinion that "The forces acting on Ms. Berryman's body in this accident appear to be within the range of forces experienced in daily living."[3] Berryman successfully moved pretrial to exclude Dr. Tencer's testimony.

Farmers also planned to present testimony by Dr. Thomas Renninger, a chiropractor who had examined Berryman before the arbitration. In his original report, Dr. Renninger gave his opinion that in view of the minor nature of the

---

[1] Clerk's Papers at 57 (answer to interrogatory number 3).
[2] Clerk's Papers at 113-15 (order granting Berryman's motion for partial summary judgment only as to liability, June 3, 2011).
[3] Clerk's Papers at 208.

accident, no more than six weeks of treatment was reasonably needed. In an addendum filed after he reviewed Dr. Tencer's report, Dr. Renninger amended his opinion and said that Berryman did not sustain any injury as a result of the accident.

Trial began on Wednesday, December 14, 2011. On that first day, the court announced that all motions in limine by both parties would be granted. One of these was Berryman's motion to prohibit Dr. Renninger from expressing an opinion based on Dr. Tencer's report and to exclude any references by counsel or witnesses to vehicle damage or Tencer's report. Another was Berryman's motion to exclude photographs of Berryman's car. After the jury was selected and sworn, Farmers asked the court to reconsider the order excluding testimony about damage to Berryman's car. Farmers hoped to counter any suggestion that Berryman had been the victim of a high-impact accident by eliciting evidence that the visible damage to her car and its trailer hitch was minimal. The court declined to reconsider, reasoning that property damage was not at issue and "one cannot surmise anything about personal injury from the state of the vehicle." The day ended with both parties making opening statements.

On Thursday, December 15, Berryman presented her case, beginning with Dr. Chinn, one of the chiropractors who treated her. The jury heard Berryman's fiancée and Berryman's mother briefly report their observations about how Berryman's back pain had impaired her everyday activities. A second chiropractor, Dr. Saggau, testified by videotaped deposition. In the opinion of

4

both chiropractors, the accident caused Berryman significant injury, and the treatment expenses she was claiming were reasonable and necessitated by the accident. The day closed with Berryman's testimony.

On Monday, December 19, Farmers presented the defense case. Dr. Renninger testified that he did not consider Berryman's injury "significant." He opined that at most, six weeks of treatment was reasonable, and beyond that Berryman would have been better off to adopt an exercise regimen. The cross-examination emphasized that Dr. Renninger had examined Berryman only once. Counsel brought out the substantial income Dr. Renninger received from doing insurance defense work in car accident cases. After Dr. Renninger testified, Berryman presented rebuttal witness Dr. Bangerter, a chiropractor who testified on the basis of a records review that Berryman had significant and chronic injuries related to the collision that would continue to require at least monthly treatment for up to five years.

On Tuesday morning, December 20, the jury heard closing arguments. Berryman requested damages between $53,000 and $56,000. Farmers argued that a verdict of $7,000 was appropriate. After deliberating for about two hours, the jury awarded Berryman a total of $36,542 in damages. The components were $18,042 for past medical expenses, $2,000 for future medical expenses, and $16,500 for past and future noneconomic damages.

A party who appeals the award in a mandatory arbitration and fails to improve his position on trial de novo must pay the attorney fees incurred by the

nonappealing party. RCW 7.06.060(1). If the nonappealing party serves a timely written offer of compromise, the offer replaces the amount of the arbitrator's award for the purpose of determining whether the appealing party has improved his position. RCW 7.06.050(1)(b). Because the jury's verdict exceeded Berryman's offer of compromise, Farmers failed to improve its position at the trial de novo, and the trial court correctly determined that Berryman was entitled to an award of fees and costs. RCW 7.06.060; Niccum v. Enquist, 175 Wn.2d 441, 286 P.3d 966 (2012).

Berryman's two attorneys, Patrick Kang and Jason Epstein, submitted a fee request based on an hourly rate of $300. They presented contemporaneous timekeeping records that had been sent to Berryman as monthly invoices. The records submitted by Kang and Epstein documented a total of 468.55 hours. In keeping with MAR 7.3, which limits the award of fees and costs to those incurred after the request for trial de novo is filed, the hours they claimed were all incurred during the period of approximately one year between the request for trial de novo and the entry of judgment, from January 11, 2011, to February 2, 2012. They requested a multiplier of 1.5 to 2.0.

Over Farmers' objections, the court found the claimed hours and rates were reasonable, for a lodestar of $140,000 for pre-verdict work. The court granted a multiplier of 2.0. The total award was $291,950 in attorney fees (including $11,950 for post-verdict work) and $9,317 in costs. The trial court denied Farmers' motion for a new trial. Farmers appeals.

6

## EXCLUSION OF EVIDENCE

Farmers assigns error to the exclusion of Dr. Tencer's testimony.

Dr. Tencer has been retained frequently as an expert defense witness in similar cases. See Stedman v. Cooper, 172 Wn. App. 9, 292 P.3d 764 (2012); Ma'ele v. Arrington, 111 Wn. App. 557, 562-64, 45 P.3d 557 (2002). The testimony he was prepared to give in this case, as set forth in his report, was similar to the testimony offered by the defendant in Stedman. The trial court's exclusion of Dr. Tencer was consistent with this court's reasoning in affirming the decision to exclude his testimony in Stedman. Following Stedman, we conclude it was not an abuse of discretion to exclude Dr. Tencer's testimony as well as the portions of Dr. Renninger's testimony that referred to and relied on Dr. Tencer's report.

Farmers also assigns error to the trial court's decision to exclude photographs of Berryman's car. The court ruled on the first day of trial that no mention should be made of damage to the car unless Berryman or her witnesses opened the door:

> No reference to vehicle damage would be admitted, and that includes asking questions of the plaintiff, that includes asking questions of any other witness regarding what they saw. The property damage is not at issue.
>  . . . .
> So, if the plaintiff opens the door by saying, you know, it was a tremendous crash, or, It was a loud bang, or, you know, any other description of the collision that leads the jurors to think this was a serious collision, then the door is open, Mr. Feldmann, and you can pursue it at that point. But otherwise, no.[4]

---

[4] Report of Proceedings at 191-92.

The next day, Berryman's attorney questioned Dr. Chinn, a chiropractor, about the cause of injury. Dr. Chinn responded that the primary cause "seemed to be the high impact rear end accident that she had about a year earlier."[5] Later, Dr. Saggau, testifying by video deposition, relayed Berryman's report that she "began to turn into the driveway when she heard loud screeching brakes, slam, and was hit from another car from the rear."[6] Although the trial court had made it plain that such remarks would allow Farmers to seek reconsideration of the ruling in limine, Farmers did not timely object or otherwise specifically argue that the chiropractors' comments about a "high impact" accident and a "slam" opened the door to the photographs.[7] We conclude Farmers has waived its objection to the ruling excluding the photographs. See Breimon v. General Motors Corp., 8 Wn. App. 747, 757, 509 P.2d 398 (1973).

Farmers also assigns error to the court's order denying the motion for a new trial. A trial court's decision to deny a new trial is reviewed for abuse of discretion. A.C. ex rel. Cooper v. Bellingham Sch. Dist., 125 Wn. App. 511, 521, 105 P.3d 400 (2004).

Farmers' motion for a new trial was based almost entirely on the court's exclusion of Dr. Tencer's testimony and the portion of Dr. Renninger's testimony that relied on Tencer's report. Farmers argued a new trial was necessary because "cumulative" error, including keeping the photographs out and allowing

---

[5] Report of Proceedings at 261.
[6] Report of Proceedings at 346-47.
[7] Report of Proceedings at 286-95.

8

the "high impact" testimony, unfairly painted a picture of a serious collision that Dr. Tencer's testimony could have rebutted. But Farmers failed to object to the "high impact" testimony as it was given and neglected to ask the trial court to admit the vehicle photographs once the door had been opened. Since the trial court did not commit error as a matter of law by excluding Tencer's testimony and the evidence that flowed from it, we conclude the trial court did not abuse its discretion in denying Farmers' motion for a new trial.

## ATTORNEY FEE AWARD ON TRIAL DE NOVO

Farmers assigns error to the trial court's award of attorney fees for 468.55 hours at $300 per hour with a multiplier of 2.0. Farmers contends the award is excessive, rewards duplicative and unsuccessful work, and inappropriately applies a multiplier to a standard damages case. We agree.

The general rule in Washington, commonly referred to as the "American rule," is that each party in a civil action will pay its own attorney fees and costs. Cosmopolitan Eng'g Grp., Inc. v. Ondeo Degremont, Inc., 159 Wn.2d 292, 296, 149 P.3d 666 (2006). But trial courts may award attorney fees when authorized "by contract, statute, or a recognized ground in equity." Cosmopolitan, 159 Wn.2d at 297. Here, a statute—RCW 7.06.060(1)—expressly entitles a nonappealing party in a trial de novo to attorney fees and costs if the appealing party fails to improve his position after requesting a trial de novo.

An appellate court will uphold an attorney fee award unless it finds the trial court manifestly abused its discretion. Discretion is abused when the trial court

exercises it on untenable grounds or for untenable reasons. Chuong Van Pham v. City of Seattle, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). The burden of demonstrating that a fee is reasonable is upon the fee applicant. Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 151, 859 P.2d 1210 (1993).

The trial court signed Berryman's proposed findings of fact and conclusions of law without making any changes except to fill in the blank for the multiplier of 2.0. The findings related to the calculation of the lodestar amount did not address Farmers' detailed arguments for reducing the hours billed to account for duplication of effort and time spent unproductively. The court simply found that the hourly rate and hours billed were reasonable.

"Courts must take an *active* role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought. Courts should not simply accept unquestioningly fee affidavits from counsel." Mahler v. Szucs, 135 Wn.2d 398, 434-35, 957 P.2d 632, 966 P.2d 305 (1998).

In Mahler, a plaintiff injured in a car accident had settled with the tortfeasor. State Farm, her insurer, demanded to be reimbursed for all the payments furnished to the plaintiff under her coverage for personal injury protection. State Farm rejected the plaintiffs' demand for State Farm's share of the attorney fees incurred in obtaining the settlement with the tortfeasor. The dispute with State Farm went to mandatory arbitration and the plaintiff prevailed. State Farm requested a trial de novo and failed to improve its position. The trial court awarded fees and costs of $32,694.59 pursuant to MAR 7.3, and a larger

amount pursuant to <u>Olympic S.S. Co. v. Centennial Ins. Co.</u>, 117 Wn.2d 37, 811 P.2d 673 (1991). The Supreme Court determined that <u>Olympic S.S.</u> was not a valid basis for awarding fees under the circumstances. Because the trial court had not explained its analysis in entering the fee award, <u>Mahler</u>, 135 Wn.2d at 430, the Supreme Court remanded and established the rule that an award of attorney fees must be supported by findings of fact and conclusions of law:

> This case exemplifies the rationale for such a rule. The record discloses affidavits from four different counsel or firms who represented Mahler. We cannot discern from the record if the trial court thought the services of four different sets of attorneys were reasonable or essential to the successful outcome. We do not know if the trial court considered if there were any duplicative or unnecessary services. We do not know if the hourly rates were reasonable. We note the trial court found two different amounts reasonable, depending upon whether MAR 7.3 or <u>Olympic S.S.</u> was the basis for fees.

<u>Mahler</u>, 135 Wn.2d at 435.

While the trial court did enter findings and conclusions in the present case, they are conclusory. There is no indication that the trial judge actively and independently confronted the question of what was a reasonable fee. We do not know if the trial court considered any of Farmers' objections to the hourly rate, the number of hours billed, or the multiplier. The court simply accepted, unquestioningly, the fee affidavits from counsel.

A trial court does not need to deduct hours here and there just to prove to the appellate court that it has taken an active role in assessing the reasonableness of a fee request. But to facilitate review, the findings must do more than give lip service to the word "reasonable." The findings must show how

the court resolved disputed issues of fact and the conclusions must explain the court's analysis.[8]

Here, the finding that the hours and rates charged were reasonable cannot by itself support the lodestar of $140,000, particularly in view of Farmers' very specific objections that certain blocks of time billed were duplicative or unnecessary. A trial court's failure to address such concerns is reversible error:

> The cross-appellants challenged several of the attorneys' time entries. They claimed that Mayer's attorneys had double charged for some of the work they performed. They also claimed that Mayer was requesting fees for wasted efforts, duplicative efforts, unidentifiable costs, and inconsistent or vaguely worded time entries. Finally, the cross-appellants claimed that Mayer was requesting fees for work unrelated to the MTCA claim. For instance, cross-appellants contested Mayer's request for fees for time spent drafting the initial complaint, which did not contain a MTCA claim. The court accepted Mayer's request in full as reasonable, without addressing any of the cross-appellants' specific challenges.
>
> Because the trial court made no findings regarding the specific challenged items, the record does not allow for a proper review of these issues. On remand, therefore, the trial court is directed to enter thorough findings regarding these specific challenged time entries.

Mayer v. City of Seattle, 102 Wn. App. 66, 82-83, 10 P.3d 408 (2000), review denied, 142 Wn.2d 1029 (2001).

The findings and conclusions in the present case suffer from the same lack of scrutiny as in Mayer and must be reversed.

---

[8] For exemplary findings and conclusions in support of a fee award and multiplier, see Bloor v. Fritz, 143 Wn. App. 718, 746-52, 180 P.3d 805 (2008) (Judge Nelson Hunt), and Broyles v. Thurston County, 147 Wn. App. 409, 446-49, 195 P.3d 985 (2008) (Judge David Foscue).

Normally, a fee award that is unsupported by an adequate record will be remanded for the entry of proper findings of fact and conclusions of law that explain the basis for the award. See Mahler, 135 Wn.2d at 435; Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 715-16, 9 P.3d 898 (2000) (remanded because trial court "simply announced a number"). This is because the trial judge is "in the best position to determine which hours should be included in the lodestar calculation." Chuong Van Pham, 159 Wn.2d at 540. Because the judge who entered the findings is no longer serving on the superior court, Farmers suggests that this court undertake the task of determining a reasonable fee. We conclude, however, that in this case a remand on the existing record is the better course of action because it will preserve to the trial court its traditional role of resolving disputed facts and exercising suitable discretion. As an appellate court, our responsibility is "to ensure that discretion is exercised on articulable grounds." Mahler, 135 Wn.2d at 435. To that end, we reiterate from Washington cases the parameters within which the discretion of the trial court is to be exercised, and we identify the features of this fee award where those parameters appear to have been exceeded.

***Lodestar calculation***

A determination of reasonable attorney fees begins with a calculation of the "lodestar," which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Mahler, 135 Wn.2d at 433-34. A lodestar fee must comply with the ethical rules for attorneys, including the

13

general rule that a lawyer shall not charge an unreasonable fee. RPC 1.5; Fetzer, 122 Wn.2d at 149-50. This consideration applies whether one's fee is being paid by a client or the opposing party. Fetzer, 122 Wn.2d at 156.

The "lodestar" is only the starting point, and the fee thus calculated is not necessarily a "reasonable" fee. Fetzer, 122 Wn.2d at 151. In assessing the reasonableness of a fee request, a "vital" consideration is "the size of the amount in dispute in relation to the fees requested." Fetzer, 122 Wn.2d at 150.

It is true that the court "will not overturn a large attorney fee award in civil litigation merely because the amount at stake in the case is small." Mahler, 135 Wn.2d at 433. This cautionary observation should not, however, become a talisman for justifying an otherwise excessive award. In a mandatory arbitration case, where the sole objective of filing suit is to obtain compensatory damages for an individual plaintiff, the proportionality of the fee award to the amount at stake remains a vital consideration.

The jury awarded Berryman $36,542 in damages. The lodestar of $140,000 as determined by the trial court is almost four times as much as the jury's valuation of the case. A lodestar figure that "grossly exceeds" the amount in controversy "should suggest a downward adjustment" even where other subjective factors in the case might tend to imply an upward adjustment. Fetzer, 122 Wn.2d at 150.

In Fetzer, our Supreme Court reversed an award of fees where "a total of 481.49 hours—the equivalent of almost 3 months of uninterrupted legal work by

one attorney—was awarded, with no examination of the actual reasonableness of these hours." Fetzer, 122 Wn.2d at 152. The court found that the attorneys had failed to exercise "'billing judgment'" and reduced the award to 70 hours. Fetzer, 122 Wn.2d at 156-57, quoting Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983).

The attorneys in Fetzer demonstrated a lack of billing judgment when they fashioned a claim for over $200,000 in attorney fees out of the simple facts of a "run-of-the-mill" commercial dispute over 120 vacuum cleaners worth less than $20,000. Fetzer, 122 Wn.2d at 156. Berryman's attorneys similarly demonstrated a lack of billing judgment when they fashioned a claim for almost $292,000 in attorney fees out of a run-of-the-mill minor injury case. The case had previously been prepared for and taken through an arbitration, the fault of the uninsured drivers was conceded before trial, the witnesses gave ordinary testimony typical of such cases, and trial took three and a half days. The value of the case in terms of compensatory damages was between $30,000 and $40,000, as evidenced by the arbitrator's award of $35,724, Berryman's settlement offer of $30,000, and the jury verdict of $36,542. It was a manifest abuse of discretion for the trial court to accept 468.55 hours as reasonable for this case.

The amount of time actually spent by a prevailing attorney is relevant, but not dispositive. Nordstrom, Inc. v. Tampourlos, 107 Wn.2d 735, 744, 733 P.2d 208 (1987). Particularly in cases where the law is settled, there is a "great

hazard that the lawyers involved will spend undue amounts of time and unnecessary effort to present the case." Nordstrom, 107 Wn.2d at 744. The lodestar must be limited to hours reasonably expended. The total hours an attorney has recorded for work in a case is to be discounted for hours spent on "unsuccessful claims, duplicated effort, or otherwise unproductive time." Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983).

Duplicated effort includes overstaffing. The record of the first two days of trial reflects that Kang handled the motions in limine, the opening statement, and all of the plaintiffs' witnesses, while on the next two days Epstein cross-examined the defense witnesses and made the closing argument. The only overlap was that Kang and Epstein each conducted a portion of the voir dire on the first day. Yet the two of them each billed for all four days of trial. The two attorneys also billed for preparing for and attending the same depositions, reviewing the same documents, and engaging in the same pretrial preparation. This would be unreasonable if the client they were representing in litigation over a $40,000 dispute was paying by the hour, and it is equally unreasonable when the bill is being paid by the opposing party.

The record in this case includes attorney fee awards that other superior court judges granted in three similar minor injury cases involving trial de novo after mandatory arbitration. In one of these, the trial judge disallowed the hours claimed by a second attorney, commenting, "While it is certainly helpful to have two attorneys in court, the defendant is not required to pay for a Cadillac

approach to a Chevrolet case."[9] We endorse that observation. The number of hours deemed reasonable in that case was less than one-third of the hours deemed reasonable in this case. The trial court here abused its discretion by failing to address Farmers' objection that it was unreasonable to bill for two attorneys.

It is also appropriate to discount for unproductive time. Bowers, 100 Wn.2d at 597, 600. By Farmers' count, Kang and Epstein recorded 43.1 hours for their attempt to obtain discovery of Farmers' claims files. This was an ordinary negligence claim, not a bad faith case. No justification is apparent for allowing recovery for time spent on a matter so unlikely to contribute to success in the case at hand.

Another category in dispute is the time related to excluding Dr. Tencer's testimony. The trial court should address Farmers' complaint that the attorneys' combined billing of more than 80 hours in this category was excessive. How to deal with testimony such as Dr. Tencer typically provides is not a novel issue. Practice advisories exist on how to argue for the exclusion of such testimony.[10]

Another issue is the allegedly excessive time billed for preparing the witnesses. By Farmers' count, the attorneys billed a combined total of 97.4 hours for "client and witness preparation," they billed additional hours for "witness

[9] Clerk's Papers at 739 (Robinson v. Kim, No. 05-2-30841-9 SEA (King County Super. Ct., Wash. Mar. 22, 2007)).

[10] See, e.g., Karen K. Koehler's and Michael D. Freeman's article, *Why crash test studies cannot provide a reliable or scientific basis for biomechanical expert opinion on injury thresholds.* 3 LMISTC § 61:1.

preparation" on trial days, and they billed an additional 33.5 hours for "preparation for trial" not otherwise detailed.[11] Berryman responded that Farmers' count was not supported by the record because the entries in question that involve some kind of trial preparation also include other work.[12]

The block billing entries tend to be obscure. For example, on November 3, 2011, Kang billed 11.7 hours for meeting with Berryman about trial preparation and also for drafting a reply brief in support of plaintiff's motions in limine.[13] How many hours were devoted to meeting with Berryman, and how many to drafting a reply brief, is impossible to tell, but either way, the amount of time spent is questionable, particularly since Epstein billed 2.5 hours on the same day for witness preparation of Berryman and her fiancé.[14] The trial court must make an independent judgment about how much time is reasonably spent in "client and witness preparation" where all but one of six witnesses had testified in the arbitration, and one of the expert witnesses testified by videotape. The court should keep in mind that the attorney's reasonable hourly rate encompasses the attorney's efficiency, or "ability to produce results in the minimum time." Bowers, 100 Wn.2d at 600.

The billing details discussed above are only some of the concerns Farmers raised below that the trial court failed to address. On remand, the trial

---

[11] Clerk's Papers at 818 (Opposition to Motion for Attorney Fees, Feb. 13, 2012).
[12] Clerk's Papers at 880 (Plaintiff's Reply in Support of Motion for Award of Fees and Costs, Feb. 14, 2012).
[13] Clerk's Papers at 703.
[14] Clerk's Papers at 776.

court should conduct a careful review of the record and make its own independent determination of the number of hours to include in the lodestar.

A useful way for a trial court to determine a lodestar is to prepare a simple table that lists, for each attorney, the hours reasonably performed for particular tasks and the rate charged, which may vary with the type of work. Bowers, 100 Wn.2d at 597-98. Such a table would be helpful in this case to cut through the fog generated by block billing. Cf. 224 Westlake, LLC v. Engstrom Props., LLC, 169 Wn. App. 700, 740, 281 P.3d 693 (2012) (fee request did not "distinguish among the tasks accomplished during the hours claimed").

In short, the trial court's decision to include all the hours claimed in the lodestar does not rest on tenable grounds. The billing appears grossly inflated and it does not appear that the trial court gave any meaningful review to the concerns raised by Farmers' well-documented objections.

*Multiplier*

After calculating a lodestar amount of $140,000, the trial court adjusted it upward using a multiplier of 2.0.

Berryman requested a multiplier based on the contingent nature of success. The contingency fee agreement that Berryman signed advised her that her alternative to the contingent fee arrangement was to pay $300 per hour on an ongoing basis. Berryman understandably decided against paying by the hour, and instead agreed to pay counsel a percentage of recovery if there was one. She further agreed that if a court or arbitrator awarded attorney fees in an

amount greater than the percentages established by the agreement, the amount so awarded would be the amount of compensation to the attorneys.[15]

The court found a multiplier of 2.0 was appropriate to reflect "the contingent nature of this case based on the substantial risks borne by Plaintiff's counsel in recovering no compensation or inadequate compensation to pay expenses and attorney's fees."[16] Farmers assigns error to the award of the multiplier.

In Washington, adjustments to the lodestar product are reserved for "rare" occasions. Sanders v. State, 169 Wn.2d 827, 869, 240 P.3d 120 (2010); Mahler, 135 Wn.2d at 434. The United States Supreme Court has concluded that enhancement for contingency under fee-shifting statutes is not permitted at all. City of Burlington v. Dague, 505 U.S. 557, 567, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992). In discussing Dague, our Supreme Court declined to prohibit contingency enhancements altogether. But our court retains the presumption that "the lodestar represents a reasonable fee." Chuong Van Pham, 159 Wn.2d at 542. Chuong Van Pham was a case brought under the Washington Law Against Discrimination, chapter 49.60 RCW. In remanding the fee award, the court left the door open for a multiplier to be applied as an exception to the presumption because in antidiscrimination cases the law "places a premium on encouraging private enforcement and, as discussed above, the possibility of a multiplier works to encourage civil rights attorneys to accept difficult cases."

---

[15] Clerk's Papers at 666-68.
[16] Clerk's Papers at 905 (finding of fact 12 and 13).

Chuong Van Pham, 159 Wn.2d at 542. In such a case, it is possible that "the lodestar figure does not adequately account for the high risk nature of a case." Chuong Van Pham, 159 Wn.2d at 542.

The burden of justifying any deviation from the lodestar rests upon the party proposing it. Adjustments to the lodestar are considered under two broad categories: the contingent nature of success and the quality of work performed. Bowers, 100 Wn.2d at 598. The court may consider the factors listed in the Rules of Professional Conduct (RPC) 1.5(a), although these factors are in large part subsumed in the determination of a reasonable fee under the lodestar method. Fetzer, 122 Wn.2d at 150; Bowers, 100 Wn.2d at 597.

To judge by published appellate opinions, our trial courts grant multipliers sparingly. The first case in which a fee multiplier is mentioned is Wilkinson v. Smith, 31 Wn. App. 1, 14, 639 P.2d 768, review denied, 97 Wn.2d 1023 (1982). The plaintiff prevailed in a claim brought under the Consumer Protection Act. The plaintiff's attorney claimed 482 hours at an hourly rate of $50 and asked for a multiplier. The court reduced the hours, awarded a fee of $15,000, and denied the request for a multiplier. This result was affirmed on appeal.

In the second case, a consumer protection issue was a small portion of the plaintiff's claim; a small award of attorney fees was affirmed on appeal, and so was a denial of a multiplier. Nuttall v. Dowell, 31 Wn. App. 98, 115, 639 P.2d 832 (unreasonable that counsel would seek not only the full amount of his fees for the entire litigation but also request to have it increased by a multiplier which

21

"would impute to counsel an unwarranted measure of extraordinary skill"), review denied, 97 Wn.2d 1015 (1982).

Next came the landmark case of Bowers. The attorneys made a one-third contingent fee agreement with the plaintiffs. They prevailed in a consumer protection claim against an escrow agent for engaging in the unauthorized practice of law—a case that presented novel issues. Unless plaintiffs prevailed, their attorneys would receive no fee. Bowers, 100 Wn.2d at 600. The trial court doubled the lodestar of $19,262 by adding 50 percent to reflect the contingent nature of success and 50 percent to recognize the high quality of the attorneys' work. Bowers, 100 Wn.2d at 594, 600-601.

The Supreme Court reversed and remanded the award with directions to calculate a lodestar figure that did not include time for duplicated work or otherwise unproductive time. The court allowed that the lodestar thus obtained could then be adjusted upward to reflect the risk the attorneys assumed at the outset that the litigation would be unsuccessful and no fee would be obtained. Bowers, at 598-99, 601. The appropriate incremental factor, or multiplier, is determined "by reference to the chances of success in the litigation." Bowers, 100 Wn.2d at 601. But no adjustment was to be made for the quality of work. Bowers, 100 Wn.2d at 601. This is because "in virtually every case the quality of work will be reflected in the reasonable hourly rate." Bowers, 100 Wn.2d at 599.

Since Bowers in 1983, there have been roughly forty published appellate cases where the facts show a request for a multiplier was made at the trial court

level. See Appendix attached to this opinion, at A. True to Bowers, none of these cases have affirmed multipliers granted solely for the outstanding quality of the work. The recurring question has been whether the business risk inherent in taking a contingent fee case justifies enhancing the lodestar.

Most often, trial courts have been affirmed in their exercise of discretion, whether they granted or denied a request for a multiplier, but there are a number of cases where the trial court's decision was not sustained on appeal. See Appendix at B.

In determining the amount of an award, the court must consider the purpose of the statute allowing for attorney fees. Fetzer, 122 Wn.2d at 149; Brand v. Dep't of Labor & Indus., 139 Wn.2d 659, 667, 989 P.2d 1111 (1999). A statute's mandate for liberal construction includes a liberal construction of the statute's provision for an award of reasonable attorney fees. Progressive Animal Welfare Soc'y v. Univ. of Wash., 114 Wn.2d 677, 683, 790 P.2d 604 (1990); Eagle Point Condo. Owners, 102 Wn. App at 713; Brand, 139 Wn.2d at 668. Most of the cases in which multipliers have been considered were brought under remedial statutes with fee-shifting provisions designed to further the statutory purposes. See Appendix at C.

Multipliers have been considered in six mandatory arbitration cases brought under RCW 7.06.050, a statute that does not contain a mandate for liberal construction. See Appendix at D. The published cases do not provide clear guidance for a case like this one.

Thus, the present case brings us to a crossroads of sorts. Whereas the Supreme Court has cautioned that multipliers should be reserved for rare instances, the argument Berryman's attorneys presented to the trial court suggests that multipliers should always be awarded when attorneys take small injury cases to mandatory arbitration on a contingent fee agreement and the result at trial de novo does not improve the defendant's position. Multipliers are necessary, the argument goes, to ensure that aggressive defense tactics used by insurance companies to drive up costs will not deter attorneys from representing clients who have minor soft tissue injuries. Berryman's motion for an award of fees referred to "the systemic claims abuses engaged in by Farmers to deter plaintiffs' lawyers from taking on cases of this nature due to the amount of risk and work involved vs. the likely benefits."[17]

The trial court found the argument persuasive. The court entered the following findings and conclusions proposed by Berryman's attorneys:

> This Court has considered the facts set forth in RPC 1.5(a) when determining a reasonable attorney's fee, including: (a) the time and effort required; (b) the terms of the fee agreement and whether the fee is contingent; (c) whether the work will preclude acceptance of other cases by the lawyer; (d) the fee customarily charged for similar work or similar cases; (e) the results obtained; and (f) the lawyers' experience, reputation, and ability. [Finding of Fact 11].
> . . . The Court also finds that the Lodestar should be adjusted upwards to reflect the contingent nature of this case based on the substantial risks borne by Plaintiff's counsel in recovering no compensation or inadequate compensation to pay expenses and attorney's fees. [Finding of Fact 12].
> . . . .
> . . . The Court further concludes as a matter of law that under the factors enumerated in Bowers v. Transamerica Title Ins.,

---

[17] Clerk's Papers at 648.

24

100 Wn.2d 581, 597-602 (1983), and all the factors provided by Plaintiff in her motion and the supporting declarations as well as considerations of resolving Court congestion, a Lodestar multiplier of 2.0 is appropriate here. [Conclusion of Law 5][18]

The trial court was not blazing a new path. The exhibits submitted in support of the fee award include documents from three unappealed mandatory arbitration cases in King County Superior Court with virtually identical findings of fact and conclusions of law to support the award of multipliers.[19]

---

[18] Clerk's Papers at 904-96.

[19] In the first, Robinson v. Kim, No. 05-2-30841-9 SEA (King County Super. Ct., Wash. Mar. 22, 2007), the trial court awarded a multiplier of 2.0 for a total attorney fee award of $100,450 (137.6 hours times hourly rate of $350, plus hours spent postverdict):

This case involved soft tissue injuries caused by a motor vehicle collision. Evidence presented by the Plaintiff suggests that these cases are costly to litigate in comparison to the recovery in many such cases and that the defense vigorously defends such cases, causing many lawyers to be reluctant to accept such cases. [Finding of Fact 13]

. . . .

. . . The lodestar fee for the attorney time spent through verdict should be adjusted upward by a multiple of 2.0, due to the undesirability of this case, the fact that the case was handled on a contingency basis by Plaintiff's counsel, the risks to Plaintiff's counsel that no fee would be earned if a verdict had been returned for the amount requested by defense counsel, the risks to Plaintiff's counsel in advancing over $8,000 in costs to take the case through trial, the fact that working on this case prevented Plaintiff's counsel from working on other cases, and the reputation of Plaintiff's counsel. [Conclusions of Law 5]

Clerk's Papers at 739-40.

In the second, Brown v. Beery, No. 06-2-12479-1 KNT (King County Super. Ct., Wash. Sept. 10, 2007), the trial court awarded a multiplier of 2.0 for a total attorney fee award of $125,157 (200 hours times hourly rate of $300, plus hours spent postverdict):

This case involved "soft tissue" injuries caused by a motor vehicle collision. This court's experience, as well as evidence presented by Plaintiff, suggests that these cases are inherently costly and risky to litigate particularly when compared to the anticipated recovery in many such cases and that defendants, through their automobile insurance carriers, often vigorously defend such cases, causing many lawyers to decline accepting taking these cases or to decline taking these cases to trial. [Finding of Fact 24].

. . . .

. . . An upward adjustment . . . is reasonable and appropriate in this case given the court's consideration of the factors set forth in RPC

25

When the granting of a multiplier becomes routine, it undermines our Supreme Court's repeated statement that adjustments to the lodestar should be rare. When some judges but not others will grant a multiplier in a mandatory arbitration case solely because the plaintiff's attorney had a contingent fee agreement and the defendant's attorney is provided by an insurance company, it raises concern about arbitrariness in the setting of fees. See Dague, 505 U.S. at 566-67. Because affirming the trial court's rationale for awarding a multiplier in this case will likely lead to multipliers being routinely granted in all such cases, we must consider whether the rationale is legally sound.

---

> 1[.5](a) . . . and the substantial risk assumed by plaintiff's lawyers by accepting and trying this case on contingency . . .
> . . . because of the increased risk borne by the plaintiff and her counsel of recovering either no compensation or inadequate compensation to pay for trial expenses and attorney fees for time spent pursuing the case to trial . . .
> . . . [and] because of the amount of time spent by plaintiff's counsel in this case at the exclusion of other more profitable and less risky cases in counsel's contingency law practice. [Conclusions of Law 5-7]

Clerk's Papers at 750-52.

In the third, Hagen v. Hilstad, 05-2-37298-2 SEA (King County Super. Ct., Wash. Jan. 24, 2007), the trial court, presided over by the same judge as in this case, awarded a multiplier of 1.5 (50 percent upward adjustment) for a total attorney fee award of $91,800 (204 hours times an hourly rate of $300):

> An upward contingency adjustment to the Lodestar amount is reasonable and appropriate in this case given the results obtained, the court's consideration of the factors set forth in RPC 1[.5](a), the results obtained, the skill and experience of plaintiff's counsel, the existence of a contingency fee agreement, and the increased risk assumed by plaintiff and her attorney by trying this case on contingency . . .
> . . . [and] because of the increased risk borne by the plaintiff and her counsel of recovering either no compensation or inadequate compensation to pay for trial expenses and attorney fees for time spent pursuing the case to trial. [Conclusions of Law 5 and 6]

Clerk's Papers at 732.

The mandatory arbitration statute makes arbitration available for damage cases where the amount in controversy is relatively small. "Mandatory arbitration is intended to provide a relatively expedient procedure to resolve claims where the plaintiff is willing to limit the amount claimed." Williams v. Tilaye, 174 Wn.2d 57, 63, 272 P.3d 235 (2012).[20] The primary goal of mandatory arbitration "is to reduce congestion in the courts and delays in hearing cases." Hudson v. Hapner, 170 Wn.2d 22, 30, 239 P.3d 579 (2010).

The attorney fee award required by the mandatory arbitration statute is not intended to put a premium on private litigation of small personal injury claims. Its purpose "is to discourage meritless appeals of arbitration awards, to reduce delay in hearing civil cases, and to relieve court congestion." Yoon v. Keeling, 91 Wn. App. 302, 305, 956 P.2d 1116 (1998). The statute carries out this intent by making it financially risky to request a trial de novo. The statute establishes a fee-shifting mechanism for cases that otherwise would be governed by the American rule requiring each party to bear its own fees and costs. Under RCW 7.06.060, only the party requesting the trial de novo is at risk of paying the other party's attorney fees. The party requesting the trial de novo must improve its position or pay its opponent's attorney fees. RCW 7.06.060(1). "By this mechanism, the nonappealing party is compensated for having been put through

---

[20] Mandatory arbitration originating in superior court is not necessarily the only forum available to a plaintiff who has suffered minor injuries in a car accident. District courts can hear low damage cases, and electing binding private arbitration may be a choice under the insurance contract, as Farmers contended it was in this case. See Clerk's Papers at 817 (Farmers' Opposition to Motion for Attorney Fees at 6).

27

a useless appeal and the attorney fees operate as a disincentive or penalty for a party that pursues a meritless appeal. The penalty can be substantial." Williams, 174 Wn.2d at 64. Farmers could have limited its loss in this case to as little as $30,000 by accepting Berryman's offer of compromise. By risking trial de novo and failing to improve its position, Farmers will now have to pay Berryman's attorney fees on top of the verdict, a substantial penalty.

In the opinion of Berryman's attorneys, the penalty prescribed by the statute is not substantial enough unless a multiplier is granted. Kang declared that "a lot of these cases result in either a zero recovery or a small recovery, which essentially results in the advanced costs not being repaid . . . and the plaintiffs' attorneys ultimately have to swallow the loss of the advanced costs."[21] The motion for an award of fees urged the trial court "to send a message to Farmers and other carriers who conduct themselves similarly that when they gamble on matters such as this one, and lose, they will not get off easily."[22]

Berryman's attorneys submitted declarations from four other personal injury lawyers to support their fee request. The common theme is that insurance companies are bringing meritless appeals from MAR arbitration awards. For example, according to attorney Thomas Bierlein, the conduct of insurance companies creates an "access to justice" problem because carriers use "scorch earth litigation tactics." He recommended doubling the lodestar to compensate the attorneys for the risk of taking the case on contingency. Attorney Scott Blair

---

[21] Clerk's Papers at 659 (Declaration of Patrick J. Kang).
[22] Clerk's Papers at 648 (Motion for Award of Fees and Costs, Feb. 6, 2012)

called the multiplier a "critical device in leveling the playing field and sending a strong message" to carriers who flood the courts "with cases that really should be resolved in the claims phase." He too recommended doubling the lodestar. Attorney Brad Moore said, "it is difficult to justify taking on a case like this if I know it is likely going to trial because of juror attitudes about minor property damage and soft tissue injuries." He also declared that "the only way that everyone can have equal access to the courts without worrying about the economic barriers being placed in their way is to make it economically painful enough for the carriers like Farmers who choose to pursue this approach." Attorney Brad Fulton recommended a multiplier of 2.0 because "Farmers would rather litigate cases than attempt to make a reasonable settlement offer." He declared that Farmers' "cynical strategy" seems to be "to drag plaintiffs through the most protracted and expensive process possible to discourage claims and punish claimants." He asserted that Farmers and other insurers "have decided, systemically and as part of a company policy, to abuse the court system and processes in this fashion, and it will continue until judges begin to make these practices not pay off." All four expressed the opinion that the total of 468.55 hours Kang and Epstein claimed was entirely reasonable.

The argument that multipliers must be routinely granted to deter insurance companies from requesting trials de novo is unpersuasive for several reasons. First, the legislature has already defined the risk that any party assumes by requesting a trial de novo. If the risk of having to pay an unmultiplied award of

attorney fees is not enough of a penalty to achieve the statutory purposes of discouraging meritless appeals and relieving court congestion, the problem inheres in the statute as presently designed and should be solved by legislative action, not by courts imposing unlegislated penalties.

Second, routinely handing out multipliers in trial de novo cases assigns disproportionate value to litigation of minor cases. Berryman experienced a private injury. There is no statute declaring that personal injury claims in general, or claims for minor soft tissue injuries in particular, serve public policy goals so important that private attorneys must be given incentives to bring them. In this respect, the purpose of the fee-shifting provision in the mandatory arbitration statute is different from the purpose of fee-shifting provisions in remedial statutes. For example, when litigation under the Consumer Protection Act produces protection for everyone who might in the future be injured by a specific violation, then it follows that the reasonableness of the attorney's fee should be governed by substantially more than the import of the case to the plaintiff alone. Connelly v. Puget Sound Collections, Inc., 16 Wn. App. 62, 65, 553 P.2d 1354 (1976). Similarly, in cases brought under the Washington Law Against Discrimination, the prospect of an upward adjustment in a contingency case is recognized as "an important tool in encouraging litigation." Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 221, 293 P.3d 413, review denied, 308 P.3d 643 (2013). Discrimination "is not just a private injury which may be compensated by money damages." Martinez v. City

30

of Tacoma, 81 Wn. App. 228, 241, 914 P.2d 86, review denied, 130 Wn.2d 1010 (1996). The law "places a premium on encouraging private enforcement" of antidiscrimination law. Chuong Van Pham, 159 Wn.2d at 542. The value in advancing civil rights cases is not limited to pecuniary considerations, and so an award of fees should not depend on obtaining substantial financial relief for the plaintiff. Perry v. Costco Wholesale, Inc., 123 Wn. App. 783, 808-09, 98 P.3d 1264 (2004).

Many plaintiffs have brought risky contingent-fee cases under remedial statutes instilled with public interest, have endured years of litigation and gone through lengthy and complex trials against aggressive and well-funded opponents, and yet their attorneys have not been granted multipliers. In cases where multipliers have been awarded, the multiplier has almost never exceeded 1.5. If the mandatory arbitration class of contingent fee plaintiffs must receive multipliers as a matter of law, then fairness dictates that all other contingent fee plaintiffs who face determined opposition should receive the same treatment. Again, this result would run counter to the Supreme Court's statements that adjustments to the lodestar should be rare.

Third, the argument of Berryman's attorneys asks this court to assume many things about insurance companies that are documented in the record only by boilerplate declarations. Are all insurance company requests for a trial de novo meritless and abusive of the judicial system? If so, the trial court can impose appropriate sanctions under CR 11 or RCW 4.84.185 (frivolous actions or

31

defense). Do insurance companies insist on a trial de novo because juries are more likely than arbitrators to be suspicious of claims for soft tissue injuries? If so, are the juries necessarily wrong? An insurance company can hardly be faulted for weighing the risk of a possible award of attorney fees against the possibility of having to pay nothing at all.

Fourth, it is well established that a multiplier should be denied where the hourly rate underlying the lodestar fee "comprehends an allowance for the contingent nature of the availability of fees." Bowers, 100 Wn.2d at 599; see Ross v. State Farm, 82 Wn. App. 787, 800, 919 P.2d 1268 (1996), rev'd on other grounds, 132 Wn.2d 507, 940 P.2d 252 (1997). To be sure, establishing an attorney's reasonable hourly rate can be challenging when the attorney has a personal injury practice in which most or all cases are handled on a contingent fee basis. In this case, Kang declared that $300 per hour was his "customary" rate, and Epstein declared that $300 per hour was "warranted" by the skill level involved, the size of the award, his reputation, and the undesirability of the case. They submitted declarations by other attorneys that $300 per hour was a reasonable hourly rate. Farmers argued that $300 was excessive given the simple nature of the case, the brevity of the trial, and the limited issues and witnesses. Farmers submitted a declaration that defense attorneys who charge by the hour would typically charge $150 to $200 for handling this type of case.

A rate of $300 per hour is not outside the range of rates charged in the Seattle area by moderately experienced and efficient attorneys who work on an

hourly basis. The issue that deserves closer examination, however, is whether the claimed rate of $300 per hour already had the ups and downs of contingent fee practice built into it. As the United States Supreme Court explained in Dague, an attorney operating on a contingency-fee basis "pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not." Dague, 505 U.S. at 565. As a general rule, courts do not have an obligation to protect attorneys who have taken the risk that a contingent fee case will end in a defense verdict with no reimbursement for advanced costs.

Under their fee agreement with Berryman, her attorneys would earn a fee of one-third for an early settlement without the need for filing suit or arbitration, 40 percent for a recovery at arbitration or the trial court level, and 50 percent in the event of an appeal. Berryman's attorneys were informed by their research into reports of jury verdicts that "most plaintiffs in minor impact soft tissue cases receive either a defense verdict or nominal damages."[23] Berryman had certified her damages were below $50,000. If the case did not settle early and instead required her attorneys to put in more than 66 hours to recover damages for Berryman at arbitration or trial, they would have earned less than $300 per hour even if they avoided a defense verdict and achieved a top award of $50,000. ($50,000 X .4 / 300 = 66.66.) In other words, the fee agreement itself indicates that they were willing to work for less than $300 per hour. Our calculation

---

[23] Clerk's Papers at 761 (Declaration of Jason Epstein).

includes many variables, but it illustrates the possibility that the hourly rate of $300 the trial court used to determine the lodestar was not the attorneys' established rate for billing clients who pay by the hour, or even their baseline expectation for achieving recovery in a contingent fee case. Rather it may be the rate that will allow them to make up for time they devote to less successful contingent-fee cases. If so, the lodestar of $300 per hour times a reasonable number of hours already accounts for the risks inherent in taking Berryman's case. This is another reason for concluding a multiplier was not warranted. The risks the attorneys complain of (the extra hours and costs required by Farmers' request for trial de novo, the possibility of Dr. Tencer's testimony being admitted) were generic. Overcoming these risks did not require skill or endurance beyond what is normally to be expected in a personal injury case.

In short, we reject the argument that a contingency enhancement is justified as matter of law after a trial de novo that does not improve the defendant's position. While trial courts must retain the discretion to award multipliers in exceptional cases, nothing in the record of the present case justifies a multiplier.

To summarize: Under Mahler, meaningful findings and conclusions must be entered to explain an award of attorney fees. Under Bowers, the trial court must make an independent evaluation of the reasonableness of the fees claimed and discount for unproductive time. Under Fetzer, when an attorney fails to use billing judgment and instead submits a grossly inflated fee request for handling a

34

small case, the court may consider a downward adjustment. Under <u>Chuong Van</u> <u>Pham</u>, occasionally a trial court will be justified in making an upward adjustment to account for risk, particularly in cases brought to enforce important public policies that government agencies lack the time, money, or ability to pursue. Presumptively, however, the lodestar represents a reasonable fee. A party who seeks an upward adjustment bears the burden of proving it is warranted by arguments rooted in the record, not in rhetoric.

### Attorney Fees on Appeal

Berryman requests an award of attorney fees on appeal under MAR 7.3, which states, "The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo." Because Farmers failed to improve its position as measured against Berryman's offer of compromise, Berryman is entitled to a modest award of attorney fees and costs on appeal for the portion of the appeal concerned with preserving the verdict, subject to compliance with RAP 18.1(d). No fee shall be awarded for defending the fee award.

The judgment on the jury verdict is affirmed. The award of attorney fees and costs is reversed and remanded for reconsideration on the existing record, consistent with this opinion.

WE CONCUR:

Becker, J.

Spearman, A.C.J.

Appelwick, J.

## APPENDIX

### A.   List of Cases

**1986-1993**

Nast v. Michels, 107 Wn.2d 300, 302, 730 P.2d 54 (1986); Travis v. Wash. Horse

Breeders Ass'n, Inc., 111 Wn.2d 396, 412-13, 759 P.2d 418 (1988); Evergreen

Int'l Inc. v. Am. Cas. Co., 52 Wn. App. 548, 553, 761 P.2d 964 (1988); Styrk v.

Cornerstone Invs., Inc., 61 Wn. App. 463, 472-74, 810 P.2d 1366 (1991), review

denied, 117 Wn.2d 1020 (1991); Vogt v. Seattle-First Nat'l Bank, 117 Wn.2d 541,

547, 817 P.2d 1364 (1991); Xieng v. Peoples Nat'l Bank of Wash., 63 Wn. App.

572, 586-87, 821 P.2d 520 (1991), aff'd, 120 Wn.2d 512, 844 P.2d 389 (1993);

Burnside v. Simpson Paper Co., 66 Wn. App. 510, 532-33, 832 P.2d 537 (1992),

aff'd, 123 Wn.2d 93, 864 P.2d 937 (1994); Wash. State Physicians Ins. Exch. &

Ass'n v. Fisons Corp.,122 Wn.2d 299, 335-36, 858 P.2d 1054 (1993).

**1994-1999**

Sing v. John L. Scott, Inc., 83 Wn. App. 55, 74-75, 920 P.2d 589 (1996), rev'd,

134 Wn.2d 24, 34, 948 P.2d 816 (1997); Ross v. State Farm Mut. Auto. Ins. Co.,

82 Wn. App. 787, 800, 919 P.2d 1268 (1996), rev'd,132 Wn.2d 507, 940 P.2d

252 (1997); McGreevy v. Or. Mut. Ins. Co., 90 Wn. App. 283, 294-95, 951 P.2d

798 (1998); Brand v. Dep't. of Labor & Indus., 91 Wn. App. 280, 286, 297, 959

P.2d 133 (1998), rev'd, 139 Wn.2d 659, 664 n.3, 989 P.2d 1111 (1999); Seattle-

First Nat'l Bank v. Wash. Ins. Guar. Ass'n, 94 Wn. App. 744, 750, 763, 972 P.2d

1282 (1999); Mike's Painting, Inc. v. Carter Welsh, Inc., 95 Wn. App. 64, 69-70,

975 P.2d 532 (1999); Steele v. Lundgren, 96 Wn. App. 773, 781, 982 P.2d 619 (1999), review denied, 139 Wn.2d 1026 (2000).

**2000-2003**

Henningsen v. Worldcom, Inc., 102 Wn. App. 828, 847-48, 9 P.3d 948 (2000); Olivine Corp. v. United Capitol Ins. Co., 105 Wn. App. 194, 202-04, 19 P.3d 1089 (2001), rev'd in part, 147 Wn.2d 148, 52 P.3d 494 (2002), dismissed after remand, 122 Wn. App. 374, 92 P.3d 273 (2004); Ethridge v. Hwang, 105 Wn. App. 447, 461-62, 20 P.3d 958 (2001); Somsak v. Criton Technologies/Heath Tecna, Inc., 113 Wn. App. 84, 98-99, 52 P.3d 43, 63 P.3d 800 (2002); Boeing Co. v. Heidy, 147 Wn.2d 78, 90-91, 51 P.3d 793 (2002); Smith v. Behr Process Corp., 113 Wn. App. 306, 342-43, 54 P.3d 665 (2002); Carlson v. Lake Chelan Cmty. Hosp., 116 Wn. App. 718, 728-29, 741-43, 75 P.3d 533 (2003), review dismissed, 150 Wn.2d 1017 (2004).

**2004-2006**

Alvarez v. Banach, 120 Wn. App. 93, 96-97, 84 P.3d 278 (2004); rev'd, 153 Wn.2d 834, 840, 109 P.3d 402 (2005); Perry v. Costco Wholesale, Inc., 123 Wn. App. 783, 808-09, 98 P.3d 1264 (2004); Mayer v. Sto Indus., Inc., 123 Wn. App. 443, 454, 460-61, 98 P.3d 116 (2004), aff'd in part, rev'd in part, 156 Wn.2d 677, 695, 132 P.3d 115 (2006); Faraj v. Chulisie, 125 Wn. App. 536, 551, 105 P.3d 36 (2004); Tribble v. Allstate Prop. & Cas. Ins. Co., 134 Wn. App. 163, 171-73, 139 P.3d 373 (2006); Banuelos v. TSA Wash., Inc., 134 Wn. App. 607, 615-17, 141

P.3d 652 (2006).

**2007-2010**

Chuong Van Pham v. City of Seattle, 159 Wn.2d 527, 541-44, 151 P.3d 976 (2007); Bostain v. Food Exp., Inc., 159 Wn.2d 700, 722, 153 P.3d 846, cert. denied, 552 U.S. 1040 (2007); Morgan v. Kingen, 141 Wn. App. 143, 169 P.3d 487 (2007), aff'd, 166 Wn.2d 526, 540, 210 P.3d 995 (2009); Bloor v. Fritz, 143 Wn. App. 718, 750-53, 180 P.3d 805 (2008); Broyles v. Thurston County, 147 Wn. App. 409, 446-53, 195 P.3d 985 (2008); Durand v. HIMC Corp., 151 Wn. App. 818, 823, 827, 214 P.3d 189 (2009), review denied, 168 Wn.2d 1020 (2010); Sanders v. State, 169 Wn.2d 827, 869, 240 P.3d 120 (2010); Collins v. Clark County Fire Dist. No. 5, 155 Wn. App. 48, 101-02, 231 P.3d 1211 (2010).

**2012-present**

Jenbere v. Lassek, 169 Wn. App. 318, 320, 279 P.3d 969, review denied, 175 Wn.2d 1028 (2012); Fiore v. PPG Indus., Inc., 169 Wn. App. 325, 355-58, 279 P.3d 972, review denied, 175 Wn.2d 1027 (2012); 224 Westlake, LLC v. Engstrom Props., LLC, 169 Wn. App. 700, 737-39, 281 P.3d 693 (2012); Deep Water Brewing, LLC v. Fairway Res., Ltd., 170 Wn. App. 1, 10-11, 282 P.3d 146 (2012); Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 221-22, 293 P.3d 413 (2013), review denied, 308 P.3d 643 (2013); Collings v. City First Mortg. Servs., LLC, 175 Wn. App. 589, 608-10, 308 P.3d 692 (2013); Wright v. State, No. 42647-1-II, 2013 WL 4824373 (Wash. Ct. App.

Sept. 10, 2013); and <u>Gautam v. Hicks</u>, No. 69406-5-I, 2013 WL 5519971 (Wash. Ct. App. Oct. 7, 2013).

### B. Affirmance and Reversal

In fourteen cases, the appellate court affirmed where the trial court considered but rejected a request for a multiplier: <u>Evergreen Int'l</u>, <u>Styrk</u>, <u>Xieng</u>, <u>Seattle-First Nat'l Bank</u>, <u>Mike's Painting</u>, <u>Steele</u>, <u>Boeing</u>, <u>Faraj</u>, <u>Morgan</u>, <u>Collins</u>, <u>Sanders</u>, and <u>Deep Water Brewing</u>. In <u>Ross</u>, the request for a multiplier was denied at the trial level and ultimately there was no award of fees at all. In <u>Alvarez</u>, it appears the outcome was to reinstate the trial court's decision, in which a multiplier was denied.

In fourteen cases, the appellate court affirmed where the trial court granted a request for a multiplier: <u>Burnside</u> (multiplier of 1.3), <u>Fisons</u> (1.5), <u>Olivine</u> (1.5), <u>Ethridge</u> (1.25), <u>Somsak</u> (1.5), <u>Smith</u> (1.5 up to dispositive ruling), <u>Carlson</u> (1.5); <u>Mayer</u> (1.57); <u>Banuelos</u> (1.5 up to summary judgment), <u>Bloor</u> (1.2), <u>Broyles</u> (1.5), <u>Durand</u> (1.5), <u>Wash. State Commc'n Access Project</u> (1.5), and <u>Collings</u> (1.2). In <u>Tribble</u>, the trial court granted a 1.5 multiplier, and the case was remanded for the court to determine if the multiplier should be altered in view of appellate reduction of the damage award.

However, there are a number of cases where the trial court's decision to grant or deny a multiplier was not sustained on appeal. In four cases, the trial court's decision to grant a multiplier was reversed, at least in part: <u>Travis</u> (1.5) (fees were not truly contingent), <u>McGreevy</u> (court awarded contingent fee of

$145,000 instead of lodestar of $45,620), <u>Westlake</u> (3.0) (fees not truly contingent; no statutory provision encouraging the litigation), and <u>Fiore</u> (.25).

In three cases, the trial court's denial of a multiplier was reversed because the stated reason for denying one was irrelevant: <u>Perry</u> (lack of proportionality not a good reason in civil rights case), <u>Chuong Van Pham</u> (plaintiff's proof problems irrelevant to premium for risk), and <u>Bostain</u> (existence of bona fide dispute in a wage case and unsettled nature of the law do not justify refusing a multiplier).

In five cases, the appellate court found there was no basis for an award of fees and the multiplier disappeared along with the rest of the fee award: <u>Nast</u>, <u>Sing</u> (1.5), <u>Lassek</u> (2.0), <u>Wright</u> (2.0), and <u>Gautam</u> (1.5). In some cases, the outcome was uncertain because although the trial court granted a multiplier, the case was remanded to have more specific findings entered or for some other reason: <u>Brand</u> (1.5), <u>Henningsen</u> (1.25), and <u>Olivine</u>.

C.  Fee Shifting Statutes

Most of the cases in which multipliers were considered have been cases brought under liberally construed remedial statutes with fee-shifting provisions designed to further the statutory purposes.  In the majority of these cases, the plaintiffs ended up with a multiplier.

Thirteen cases were brought under the Consumer Protection Act: <u>Travis</u>, <u>Evergreen Int'l</u>, <u>Styrk</u>, <u>Vogt</u>, <u>Fisons</u>, <u>Sing</u>, <u>Ethridge</u>, <u>Smith</u>, <u>Carlson</u>, <u>Mayer</u>, <u>Banuelos</u>, <u>Bloor</u>, and <u>Collings</u>.  Eight of these ended up with multipliers; <u>Travis</u>,

Evergreen Int'l, Styrk and Sing did not. In Vogt, the ultimate outcome of the request for a multiplier is unclear because there was a remand.

Ten cases were brought under the Washington Law Against Discrimination: Xieng, Burnside, Steele, Henningsen, Carlson, Perry, Chuong Van Pham, Broyles, Collins, and Wash. State Comm. Access Project. Seven ended up with multipliers affirmed, or at least the possibility of a multiplier being awarded on remand. Xieng, Steele, and Collins did not get multipliers.

Four cases were for wage claims: Morgan, Bostain, Durand, and Fiore. Plaintiffs in the first three received a multiplier; the plaintiff in Fiore did not.

Three cases involved an industrial insurance claim; a multiplier was approved in Somsak but denied in Boeing; the outcome of the request was left unclear in Brand.

Three cases—Nast, Sanders, and Wright— involved the Public Records Act; none received a multiplier.

Relatively few cases involved a private contractual dispute; none of the prevailing parties ended up with a multiplier. In Mike's Painting and Deep Water Brewing, the trial court's decision not to grant a multiplier was affirmed. In Westlake, the multiplier granted by the trial court was reversed. Three cases included in this category are Ross, McGreevy, and Olivine, where the fee award was based on Olympic S.S. In Olivine, the trial court awarded a multiplier but further proceedings made it unlikely the fee award was ever collected.

D. Mandatory Arbitration Cases

In Alvarez and Faraj, the trial courts denied a multiplier; that result did not change on appeal. In Lassek and Gautam, the trial courts awarded multipliers of 2.0 and 1.5 respectively, but in each case the entire award was reversed on appeal on the ground that the appealing party had improved his position and thus did not need to pay the other party's attorney fees. In Fiore, the court reversed the multiplier awarded by the trial court in a wage claim litigated in a mandatory arbitration.

In Tribble, the arbitrator awarded $35,000.00; the jury awarded $373,542.50 in a four-day trial de novo. The trial court established an attorney fee lodestar based on Tribble's uncontested attorney fees of $27,000.00 and then granted a multiplier of 1.5 for a total fee award of $40,500.00. This court reversed the damage award and remanded for a reduction to $50,000.00, the policy limits for the underinsured motorist coverage in question. We held it was proper for the court to consider the contingent nature of the case, but the trial court had also based the multiplier in part on the result obtained. The fee award was remanded for reconsideration in view of the significant reduction of the damage award.